**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Edwin Tony DAVIS,**
**Defendant-Appellant.**

**No. 77-5515**
**Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

April 27, 1978.

* Rule 18, 5 Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.*, 5 Cir., 1970, 431 F.2d 409, Part I.

Roy E. Barnes, Marietta, Ga., for defendant-appellant.

William L. Harper, U. S. Atty., William M. Tetrick, Jr., Asst. U. S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before MORGAN, CLARK and TJOFLAT, Circuit Judges.

TJOFLAT, Circuit Judge:

The appellant was convicted, following a jury trial in district court, of having received a firearm that had been shipped or transported in interstate commerce in violation of 18 U.S.C. § 922(h) (1976).[1] In this appeal, he raises two claims of reversible error in the admission of evidence before the jury. The first claim, that the firearm in question, a Colt .38 revolver, was received in evidence in violation of appellant's fourth amendment rights, is meritless and requires no discussion. The second claim, however, has merit. The district court committed prejudicial error when it allowed the Government, over defense objection, to employ hearsay evidence to prove the shipment or transportation of the firearm in interstate commerce. Appellant's conviction must therefore be set aside and the case remanded for a new trial.

---

1. Section 922(h) provides in pertinent part as follows:

> It shall be unlawful for any person—
> (1) . . . who has been convicted in any court of . . . a crime punishable by imprisonment for a term exceeding one year;
> . . . . .
> to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

Appellant had previously been convicted of violating the Georgia Controlled Substances Act, a crime punishable by imprisonment for a term exceeding one year.

## I

The hearsay evidence was critical to the Government's case. It was contained in two documents produced by the second, and last, Government witness, Special Agent William Lee Steed of the Bureau of Alcohol, Tobacco and Firearms (ATF). Steed was ATF's investigating agent in this case. He had been called into the case following the appellant's arrest, and the seizure of the Colt revolver, by a Cobb County, Georgia, police officer. Steed's assignment was to determine whether the appellant had committed a section 922(h) offense. Since the appellant was a felon, all that Steed had to ascertain was whether the appellant had received a firearm, the Colt .38, shipped or transported in interstate commerce. In carrying out this task, Steed followed the routine ATF procedure for tracing the history of firearms from manufacture to the latest recorded purchase.

Agent Steed's first step was to make a telephone call to ATF's Washington, D. C., office to report the identifying data about the revolver. Steed followed the call with a formal inquiry by forwarding to that office ATF form F 7520.5, entitled "Request for Tracing Firearms," in which he gave a detailed description of the revolver. The response from Washington was set out in section B of the form, entitled "Transfer Record of Firearm," and was written purportedly by the person making the trace. The response indicated that the gun had been bought in Georgia by three successive purchasers from January 22, 1974, to March 14, 1974.

The second step of Agent Steed's investigation commenced when he mailed a "Request for Certification of Firearms Record Search," ATF form F 7520.4, to Colt Industries in Hartford, Connecticut. Part I of the form, entitled "Record Search Information," was filled out by Steed. He identified the revolver and indicated that it had

been shipped on January 22, 1974, to G. T. Distributors, Rossville, Georgia, as consignee. The response of ATF's Washington office on form F 7520.5 had named G. T. Distributors as the initial purchaser. In the mailing to Colt Industries, Steed enclosed a self-addressed, franked envelope to be used by Colt's records custodian in making a reply. In due course, Agent Steed received a reply. The reply was filled-in by hand on Part II of form F 7520.4 by a person who purported to be M. S. Huber, the custodian of records of Colt Industries. The reply stated that the .38 revolver had been manufactured by Colt in Connecticut and, on January 22, 1974, had been sold and shipped by Colt to G. T. Distributors, Rossville, Georgia.

The Government's foundation for the introduction of these two ATF forms in evidence was established inartfully, at best. In piecemeal fashion, the prosecutor eventually developed that the tracing of firearms, through the use of the form inquiries made by Agent Steed in this case, was a regular, routine occurrence in the ATF Bureau and that the Bureau placed reliance on the results of this tracing procedure. In addition to showing that these inquiries had been made by Steed himself, the prosecutor proved that in accordance with standard ATF operating procedures, the completed forms had been maintained in the investigative file and that the file had been kept in Steed's exclusive possession, custody, and control. Having developed this much, the prosecutor moved the introduction of the documents in evidence, indicating that they qualified as an exception to the hearsay rule relating to "routine practice." Record, vol. 2, at 40.

 The district judge first considered admitting the exhibits under the "public records or reports" exception to the hearsay rule, Fed.R.Evid. 803(8).[2] He declined to

---

**2.** The rule provides in part as follows:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

(8) Public records and reports. Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or

invoke this exception because the Government's proffer had not explicitly addressed the conditions of admissibility inherent in the exception and the documents did not appear to have been properly authenticated as public records or reports.[3] No testimony had been elicited to demonstrate, for example, that these documents were authorized by law to be recorded or filed in a public office or that they were from the public office where items of this nature are kept. We are convinced that the district court's ruling is correct. The Government's proffer was inadequate not only for these reasons but also because it was insufficient to overcome the hurdle posed by subpart (C) of rule 803(8), which, in criminal cases, precludes the Government from introducing evidence of "factual findings resulting from an investigation made pursuant to authority granted by law." See note 2 *supra*. In our view, the recitals in the two exhibits, considered together, are tantamount to factual findings resulting from an ATF investigation.

The district court next considered the possibility of receiving the exhibits under the hearsay exception for records of regularly conducted activity. That exception is created by rule 803(6), Fed.R.Evid., which authorizes the admission of records of such activity regardless of the declarant's availability as a witness. It provides as follows:

(6) Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

The court acknowledged that the information entered on the two ATF forms did not originate within the Bureau. ATF merely preserved the information as reported on the forms. Thus, it was questionable whether the documents were actually a part of the records of the Bureau's business and admissible under the rule 803(6) exception. The court was impressed, however, that it was part of ATF's regular business activity to make the sort of inquiries made here and to maintain the results of those inquiries in its investigative files. Also impressive to the court was ATF's reliance upon that information in the conduct of its affairs. On the basis of these facts, the prerequisites to admissibility under the hearsay exception were found to have been

agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, or (C) in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

**3.** Fed.R.Evid. 901, dealing with authentication, provides in part as follows:

(a) General provision. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

(b) Illustrations. By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:

. . . .

(7) Public records or reports. Evidence that a writing authorized by law to be recorded or filed and in fact recorded or filed in a public office, or a purported public record, report, statement, or data compilation, in any form, is from the public office where items of this nature are kept.

established, and the exhibits were received in evidence. The Government was thus enabled to establish the essential element of its case, the interstate shipment or transportation of the firearm.

## II

The appellant contends that the admission of the exhibits in question was not only an erroneous application of rule 803(6) but also a violation of his sixth amendment right of confrontation.[4] We agree with appellant's contention that the exhibits do not fall within the exception to the hearsay rule provided in rule 803(6); consequently, it is unnecessary for us to decide the sixth amendment issue.

■ The ATF documents in this case contain hearsay from three sources: Agent Steed; the unknown persons who partici-

pated in making up the response from ATF's Washington, D. C., office;[5] and M. S. Huber, the Colt Industries' custodian of records. The information provided by the first two sources was in large measure corroborative of undisputed facts already established before the jury. The information, as it did little more than depict the salient features of the firearm, was not prejudicial; it did not bear directly on the crucial interstate issue.[6] On the other hand, the information provided on form F 7520.4 by the third source, M. S. Huber, went to the heart of that issue. It is obvious that without the statement that Colt had manufactured the revolver in Connecticut and shipped it to Rossville, Georgia, the appellant would have been entitled to a directed verdict of acquittal.[7]

Huber's unsworn statement was plainly a substitute for the presentation of live, sworn courtroom testimony by the records

---

**4.** The sixth amendment provides, in part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." U.S. Const. amend. VI.

**5.** The Government's brief states that the information recited in ATF form F 7570.5 came from the National Firearms Tracing Center. Brief for Appellee at 10. We have been unable to find any testimony in the record to support this statement. Agent Steed, the witness who attempted to explain the processing of the form, said nothing, either in his testimony before the jury or in his proffer to the court, that would identify the source of the information placed on the form. All he said was that the form came from AFT's Washington, D. C., office. It is apparent from an examination of the handwriting on the document that the information from that office was recorded by three persons.

**6.** Most of the information provided by Agent Steed and ATF's Washington, D. C., office concerned the identifying characteristics of the Colt .38 revolver previously received in evidence. Steed's statements were hearsay by definition under Fed.R.Evid. 801, but since he was available for cross-examination on the statements, the ends sought to be achieved by the hearsay rule—the examination of the witness under oath, in the presence of the trier of fact, and subject to cross-examination—were satisfied.

The reception of Steed's out-of-court statements was therefore harmless error. As for the information received from the persons in Washington, D. C., it worked no prejudice on the appellant and thus was also harmless.

**7.** The Government contends that any error in the admission of form 7520.4 into evidence was harmless. It argues that the testimony of Agent Steed had already established that the revolver had been shipped or transported in interstate commerce and that the information contained in the form was merely corroborative of that testimony. The record does not bear out this contention. Our reading of Steed's testimony is that he was able to say only that to his knowledge, Colt Industries maintained (at the time he was testifying) no manufacturing facilities in Georgia. He did not testify as to when this particular revolver was manufactured, nor did he make any attempt to say where Colt may have had a plant at that time.

To allow the jury to convict the appellant, several crucial inferences would have had to have been drawn from Steed's testimony alone. From his statement at the time of trial that to his knowledge, no Colt plant existed in Georgia, the jury would have had to infer that there was no plant there at the time of the gun's manufacture. The jury would then have had to draw the further inference that the gun was manufactured without Georgia and, finally, that the gun was shipped into Georgia in interstate commerce.

custodian of Colt Industries.[8] By successfully employing this substitute, the Government's case, it seems to us, was made considerably easier. Huber, in being saved an appearance before the jury, was rendered immune to cross-examination, thus eliminating the possibility that the defense might be able to keep his testimony from the jury altogether by showing that a condition essential to admissibility under rule 803(6) could not be met. The fact is that Huber's statement falls far short of meeting these conditions.

The statement indicates nothing about Colt Industries' records pertaining to its manufacture and sale of firearms, beyond the bald statement that it has such records. It leaves open to rank speculation what involvement, if any, Huber may have had in the making of entries in those records. All that form F 7520.4 tells us is that Huber was the records custodian on the date the form was filled out, January 31, 1977, which was three years and nine days after Colt apparently sold the revolver to G. T. Distributors in Rossville, Georgia. There are further deficiencies, we think, in the foundation laid for the reception of Huber's statement. For example, the statement is silent as to how Colt recorded the information concerning the manufacture and distribution of firearms or whether, in the language of rule 803(6), it was "the regular practice of [Colt] to make [such] record[s]"; whether the records were "kept in the course of a regularly conducted business activity"; and whether they were "made at or near the time by, or from information transmitted by, a person with knowledge."

In sum, had the prosecutor in this case called Huber to the witness stand and elicited a foundation as thin as that disclosed by ATF form F 7520.4, the witness would not have been permitted to tell the jury, as he was able to do through the form, that Colt Industries had manufactured the revolver in question in Connecticut and had sold and shipped it to G. T. Distributors of Rossville, Georgia, on January 22, 1974. Nor would Huber have been allowed to communicate that information to the jury through the device of a refreshed recollection without the defense being first afforded an opportunity, in accordance with Fed.R.Evid. 612, to inspect the records being used to prompt his recollection.[9]

**8.** Part II of form F 7520.4, containing Huber's statement, is set forth below.

PART II — CERTIFICATION *(To be completed by the custodian of records for the firm)*

I certify that I am the custodian of the records for *Colt Industries Firearms Div* *(Name and address of manufacturer/importer/dealer)* *150 Huy Shope Ave Hartford Conn*

which pertain to the firearms ☒ manufactured ☐ imported ☒ sold by said firm, and pertaining to the sale, shipment, and delivery of such firearms. I further certify that the records of this firm show that the firearm described in Part 1, above, was ☒ manufactured ☐ imported ☒ sold by the said firm in *Rocky Hill Conn* *(City, county and state where manufactured/imported/sold)* and that it was shipped by said firm from *Rocky Hill Conn* *(City and state of shipment)* on *1/22/74* *(Date of shipment)* to the following consignee: *G. T. Distributos — Rossville GA.* *(Name and address of consignee)*

SIGNATURE OF THE CUSTODIAN OF RECORDS

TELEPHONE NUMBER *(Area Code)* *703 278 - 8550* DATE *1/31/77*

TYPE OR PRINT CUSTODIAN'S NAME *M S. Huber* CUSTODIAN'S TITLE *Historian*

**9.** Fed.R.Evid. 612 provides as follows:
Except as otherwise provided in criminal proceedings by section 3500 of title 18, United States Code, *if a witness uses a writing to refresh his memory for the purpose of testifying, either —*

(1) *while testifying, or*
(2) *before testifying, if the court in its discretion determines it is necessary in the interests of justice, an adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness*

We do not believe that the drafters of the rule 803(6) hearsay exception intended it to authorize the reception of rank hearsay such as that presented by Huber's statement in this case. Moreover, our reading of the rule precludes the treatment of form F 7520.4 as a record of regularly conducted activity of the Bureau. When we measure the document under the limitations of the rule, we find that Part II, the Huber statement, though a "report," was not "made at or near the time" of the "acts or events" reported, i. e., the manufacture, sale and shipment of the .38 revolver; it is not shown that the report was made "by, or from information transmitted by, a person with knowledge" of these "acts or events" and was "kept in the course of a regularly conducted business activity [of ATF]"; and it was not "the regular practice of [ATF's] business activity to make the . . . report." In short, the report does not meet the rule 803(6) criteria.[10]

We have considered whether the Government's foundation is sufficient to have warranted the reception of the exhibit in evidence under any of the other hearsay exceptions created by the rules and conclude that it is not.[11] Having found that the district court erred in admitting ATF form F 7520.4 in evidence and that such error is not harmless, we reverse appellant's conviction and remand the case for a new trial.

REVERSED and REMANDED.

---

thereon, and to introduce in evidence those portions which relate to the testimony of the witness. If it is claimed that the writing contains matters not related to the subject matter of the testimony, the court shall examine the writing in camera, excise any portions not so related, and order delivery of the remainder to the party entitled thereto. Any portion withheld over objections shall be preserved and made available to the appellate court in the event of an appeal. If a writing is not produced or delivered pursuant to order under this rule, the court shall make any order justice requires, except that in criminal cases when the prosecution elects not to comply, the order shall be one striking the testimony or, if the court in its discretion determines that the interests of justice so require, declaring a mistrial.

(Emphasis added.)

Right of confrontation policies obviously underpin the emphasized language of this rule. They also influenced the drafting of Rules 803(24) and 804(b)(5), Fed.R.Evid. Cf. Matthews v. United States, 217 F.2d 409, 418 (5th Cir. 1954) (right of confrontation policies and the sixth amendment). See note 11 infra.

10. We add that a foundation as shallow as that demonstrated in the Government's proffer in support of this exhibit affords no basis for determining whether "the source of [the] information or the method or circumstances of preparation indicate lack of trustworthiness." Fed.R.Evid. 803(6).

11. The only other hearsay exception conceivably applicable is that found in Fed.R.Evid. 803(24) and its counterpart, Fed.R.Evid. 804(b)(5). Each states as follows:

Other exceptions. A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.

(Emphasis added.)

The record discloses that the Government made no attempt to invoke the exception by giving the defense the required advance notice of the hearsay evidence to be offered at trial.