**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Larry HARPER, Defendant-Appellant.**

No. 86-4247.
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Oct. 9, 1986.

---

W. Howard Gunn, Aberdeen, Miss., for defendant-appellant.

Glen H. Davidson, U.S. Atty., John M. Alexander, Asst. U.S. Atty., Oxford, Miss., for plaintiff-appellee.

Before GEE, JOLLY and HIGGINBOTHAM, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Larry Harper, a four-time convicted felon, appeals his conviction on two counts of making false statements in connection with the acquisition of a firearm from a licensed dealer, in violation of 18 U.S.C. §§ 922(a)(6) and 924, one count of possessing an illegal firearm, in violation of 26 U.S.C. § 5845, and four counts of receiving or possessing firearms previously transported in interstate commerce, in violation of 18 U.S.C. app. § 1202(a)(1). On appeal, Harper raises the following issues: (1) the court's refusal of a jury instruction of self-defense in the charges under 18 U.S.C. app. § 1202; (2) the court's denial of his motion to dismiss and/or motion to require the government to elect to proceed under a single count; (3) the court's denial of his motion to suppress evidence; (4) the court's overruling of his motion for a mistrial following questions by the government regarding the failure of a witness to testify; and (5) the court's refusal of his motion for a directed verdict on the grounds that the government failed to prove that the firearms were received in interstate commerce.

This court finds no merit in any of the arguments advanced and the district court is affirmed.

### I

The Fifth Circuit has established the four elements of the justification defense[1] to a charge of violating 18 U.S.C. app. § 1202(a)(1).[2] The defendant must show

(1) that defendant was under an unlawful and "present, imminent, and impending [threat] of such a nature as to induce a well-grounded apprehension of death or serious bodily injury"; (2) that defendant had not "recklessly or negligently placed himself in a situation in which it was probable that he would be [forced to choose the criminal conduct]"; (3) that defendant had no "reasonable, legal alternative to violating the law, 'a chance both to refuse to do the criminal act and also to avoid the threatened harm' "; and (4) "that a direct causal relationship may be reasonably anticipated between the [criminal] action taken and the avoidance of the [threatened] harm."

*United States v. Gant,* 691 F.2d 1159, 1162–63 (5th Cir.1982) (citations and footnotes omitted) (brackets in original).

Harper contends that he purchased the gun mentioned in count 2 of the indictment from a pawnshop for the purpose of protecting himself and his fiancee at his business, which had been the object of several robbery attempts between April 1984

---

**1.** The proper name of this defense has apparently not been established. Harper refers to his defense as one of self-defense. In *United States v. Panter,* 688 F.2d 268, 272 n. 7 (5th Cir.1982), the court noted that commentators are not in agreement as to the proper label but concluded that the facts alleged by Panter were sufficient as either a self-defense or necessity defense. *Id.* In *United States v. Gant,* 691 F.2d 1159, 1161, n. 3 (5th Cir.1982), the court discussed the commentators' disagreement over whether the defense was one of duress or necessity. The circumstances alleged by Harper fail to meet the criteria of any of the three defenses, duress, self-defense, or necessity, as one of justification. We, therefore, like the *Gant* court, refer generally to Harper's defense as one of justification.

**2.** 18 U.S.C. app. § 1202(a)(1) provides in part:

Receipt, possession, or transportation of firearms

(a) Persons liable; penalties for violations Any person who—

(1) has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony, ...

and who receives, possesses, or transports in commerce or affecting commerce, ... any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both.

and September 1985.[3] In *United States v. Panter*, 688 F.2d 268 (5th Cir.1982), in which the Fifth Circuit first recognized the defense to a section 1202(a)(1) charge, the court "emphasize[d] that our holding protects a § 1202 defendant only for possession during the time he is endangered." *Panter*, 688 F.2d at 272. According to Harper's testimony, he gave the gun to his fiancee immediately following the purchase. There was no evidence that he was in danger of imminent bodily harm at the moment he purchased and possessed the gun; therefore, Harper is not entitled to the protection of the defense. Harper's defense must also fail because of the availability of "reasonable, legal alternatives" to possession of a firearm. Harper could have notified the police of the threatened thefts and could also have taken other steps to lessen the likelihood of a robbery at his business, or the matter of purchase and possession of a weapon for protection could have been left to his companion-fiancee. To establish that he had no alternative to violating section 1202, Harper "must show that he had actually tried the alternative or had no time to try it, or that a history of futile attempts revealed the illusionary benefits of the alternative." *Gant*, 691 F.2d at 1164. This, Harper failed to do. Additionally, we cannot clearly perceive a "direct causal relationship" between Harper's possession of a gun and protection from a threatened robbery. As the court in *Gant* stated, "Although defendant's possession and probable use of a gun makes [sic] a robbery attempt less attractive, it does not eliminate defendant's danger." 691 F.2d at 1164.

## II

█ Harper contends that the government improperly prosecuted him for both possession and receipt of a firearm under section 1202(a)(1). Harper bases his argument on the fact that on each of counts 2, 3, 5 and 7, the indictment charged him with possession and receipt as a *single offense*.[4] Harper's argument on this point is rather confused as he relies on Fifth Circuit cases holding that the United States may not prosecute a convicted felon for receipt of a firearm under 18 U.S.C. § 922(h) and for possession of that same firearm under 18 U.S.C. App. § 1202(a) as separate offenses. *See United States v. Hodges*, 628 F.2d 350 (5th Cir.1980); *United States v. Larson*, 625 F.2d 67 (5th Cir.1980). He argues that, by analogy, he cannot be prosecuted for receipt and possession of the same firearm under section 1202. Harper's argument is based on holdings of the Fifth Circuit that have been modified by the Supreme Court. In *Ball v. United States*, 470 U.S. 856, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985), the Supreme Court held that a convicted felon may be "prosecuted simultaneously for violations of §§ 922(h) and 1202(a) involving the same firearm." *Id.* 105 S.Ct. at 1671. The felon may not, however, in that situation, be convicted and sentenced under both statutes. *Id.* 105 S.Ct. at 1674. *Ball's* holding is based on the Court's conclusion that "Congress had no intention of creating duplicative punishment for one limited class of persons falling within the overlap between the two Titles—convicted felons who receive firearms and who, by definition, possess them." *Ball*, 105 S.Ct. at 1673. *Ball* provides no support for Har-

---

**3.** Harper's attempted justification defense is apparently limited to this count. Harper also completed an ATF form 4473 for the purchase of a gun from Gary's Pawn Shop in November 1984 (count 5). Harper testified that in this transaction he merely provided the money for the gun's owner to retrieve it from the pawn shop. The gun found in Harper's possession on October 5, 1984, (count 3) allegedly belonged to his girl friend who put it in the pocket of Harper's jacket which she was wearing at the time of the purchase. Harper denies knowing the location of the sawed-off shotgun and .38 caliber Armenius (count 7) found in his motel room

on May 22, 1985. The jury obviously rejected these factual explanations to the extent that they were offered as defenses to the crimes charged.

**4.** Each count based on section 1202 involves different firearms received and possessed by Harper at different times. Thus, the indictment does not violate the well established rule "that the simultaneous, undifferentiated possession of multiple firearms constitutes only one offense under 18 U.S.C. App. § 1202(a)." *United States v. Hodges*, 628 F.2d 350, 351 (5th Cir.1980).

per's argument. Harper was charged, as we have noted, with receipt and possession as a single offense under one statute, and therefore does not face the possibility of "duplicative punishment" for a single act.

██ Harper also specifically objects to the use of the conjunctive, "receive and possess," in the indictment, rather than the disjunctive, "receives [or] possesses," as used in the statute. Harper contends that, to raise his justification defense, he was required to admit possession. He thereby incriminated himself as to receipt in violation of his fifth amendment rights. Again we are somewhat confused by Harper's argument. It is difficult for us to understand how the language in the indictment is the cause of the alleged fifth amendment violation. By admitting possession, a defendant admits receipt, regardless of whether the indictment reads "receive and possess" or "receive or possess." Although it is by no means clear that his personal testimony was necessary to present this particular defense, Harper did testify voluntarily. By doing so, he "waived his fifth amendment right and became obligated, as any other witness, to answer all relevant questions." *United States v. Brannon*, 546 F.2d 1242, 1246 (5th Cir.), *reh'g den.*, 549 F.2d 204 (1977).

### III

After a hearing on Harper's motion to suppress evidence, the district court, citing *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1985), ruled that the officer had "an objective, reasonable belief that there was probable cause to believe the warrant was valid" and that he in good faith relied on it. The district court did not rule on Harper's specific fourth amendment objections to the search.

██ *Leon* does not require that a court resolve fourth amendment questions prior to determining the good-faith issue. *See Leon*, 104 S.Ct. at 3422. A reviewing court

should do so, however, if the analysis would "provide guidance on the limits of the fourth amendment." *United States v. Maggitt*, 778 F.2d 1029, 1033 (5th Cir.1985). Here no question of broad import is raised; the only issue is whether the relevant facts constitute probable cause.[5] We therefore go directly to the issue of the applicability of the good-faith exception to the exclusionary rule as set out in *Leon*.

██ In *Leon*, the United States Supreme Court reasoned that suppression of evidence obtained by an officer acting in good faith did not effectively further the purpose of the exclusionary rule, which is to deter police misconduct. 104 S.Ct. at 3419–20. Therefore, the Court concluded "that the marginal or non-existent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion." *Id.* 104 S.Ct. at 3421. While the issuance of a warrant is generally sufficient to demonstrate the officer's good faith, the officer's "reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues must be objectively reasonable." *Id.* The Court identified four situations in which evidence seized in reliance on a warrant should nevertheless be suppressed:

1) the magistrate issued the warrant in reliance on a deliberately or recklessly false affidavit;

2) the magistrate abandoned his judicial role and failed to perform his neutral and detached function;

3) the warrant was based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; or

4) the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized.

---

**5.** Although we do not reach the issue, we note that, considering the totality of the circumstances as described in our discussion in text, *infra*, it seems undeniable that probable cause for issuance of the warrant existed.

104 S.Ct. at 3421–22 (citations omitted). *See United States v. Gant,* 759 F.2d 484, 487 (5th Cir.1985).

■ Harper contends that in issuing the warrant on a "bare bones" affidavit, the magistrate abandoned his detached and neutral role and that the affidavit supporting the warrant was so deficient that the officer's belief in the existence of probable cause was entirely unreasonable. A review of the affidavit quickly disposes of Harper's contentions. According to the affidavit, the officer who obtained the warrant had on that day surveilled Harper's motel room and had seen several people, including a known drug dealer and a known marijuana user, enter the room and leave shortly afterwards. The surveillance was prompted by an informant's tip that Harper was selling marijuana and cocaine out of that room. The officer also used an informant to conduct a controlled purchase of marijuana from an occupant of the room; the purchaser informed the officer that he saw quantities of marijuana in the room other than that purchased. As was explained at the suppression hearing, a controlled purchase is one carefully supervised by the police officer, including a pat-down and search of the informant before the purchase and prompt delivery of the contraband after the purchase. In this case the officer observed the informant from the time of the pat-down to delivery except for the short period of time the informant was in the motel room. Although not stated in the affidavit, implicit in carrying out a controlled purchase is a determination that the purchaser has no contraband in his possession prior to purchase, and that the purchaser does have contraband immediately upon leaving the seller. The probability that illegal activity was occurring in the room was convincingly demonstrated by the controlled purchase of marijuana by an informant within twenty-four hours of the issuance of the warrant. It is clear then that the magistrate neither abandoned his judicial role nor failed to perform his neutral and detached function and that the officer had an objective and reasonable basis for relying on the validity of the war-

rant. We therefore conclude that Harper's motion to suppress evidence was properly denied.

## IV

■ Harper also objected to a question asked of him by the government on cross-examination regarding the failure of a particular witness, Richard Dean, to testify. Dean was a cousin and associate of the defendant. Harper testified on direct that one of the guns purchased at Gary's Pawn Shop originally belonged to Dean. Harper stated that, immediately after buying the sawed-off shotgun, he put it in the trunk of Dean's car. He testified that Dean later hid the shot gun as well as a pistol of his own in Harper's motel room. Following Harper's direct examination, the prosecutor asked where Dean was, to which Harper responded that he was in the Monroe County Jail. The prosecutor then asked, "He's not here in the courthouse testifying, is he?" Defense counsel objected and the court instructed the jury to disregard the question concerning whether Dean was to testify.

On two occasions during presentation of the government's case, defense counsel questioned witnesses on cross-examination regarding Dean's whereabouts. Both responses were that he was in the Monroe County Jail. It should also be noted that, prior to trial, the court granted the defendant's motion for writ of *habeas corpus ad testificandum* to make Dean available to testify for the defendant.

Because defense counsel on several occasions solicited testimony regarding Dean's role in Harper's affairs, and Dean's present location, and because the trial court instructed the jury to disregard any testimony that was possibly prejudicial, we find that prosecutorial error committed, if any at all, was harmless.

## V

■ Harper finally contends that the government failed to prove that the firearms in question were transported in inter-

state commerce, and that as a result, his motion for a directed verdict should have been granted. The government offered the live testimony of Richard Douglas Craze, an expert in firearm origin, identification, and design classification. As a firearms enforcement officer with the Bureau of Alcohol, Tobacco and Firearms, Craze examines, identifies and test-fires firearms, and conducts firearms-identification training. He testified that, to determine the identification and location of firearms manufacturers, he notes the markings on the firearms, which may include the manufacturer's name and location, the caliber, model designation, and a unique serial number. Additional information is obtained from company catalogues, industry periodicals and trade publications.

The guns mentioned in counts 3 and 7 of the indictment were introduced into evidence. Craze examined the markings on those firearms, and studied trade publications and company catalogues. He stated that both guns were manufactured in West Germany. Craze also reviewed the information included on the ATF 4473 forms which were admitted into evidence as exhibits 5 and 6.[6] Craze stated that the gun described in exhibit 5 was manufactured in Connecticut and that the firearm described in exhibit 6 was manufactured in either West Germany or Florida. Craze further testified that none of the firearms in question was manufactured in the State of Mississippi.

Harper contends that Craze's opinions were based on hearsay and that, under the rationale of *United States v. Davis,* 571 F.2d 1354 (5th Cir.1978), should not have been admitted. In *Davis,* the Fifth Circuit rejected the use of ATF forms completed by the records custodian of the firearm's manufacturer as proof of movement in interstate commerce.[7] The unsworn statement of the records custodian, who was unavailable for cross-examination, did not contain information regarding the procedures by which such records were maintained. The Fifth Circuit concluded that the statement was inadmissible hearsay. *Davis* is clearly distinguishable by a comparison of the quality of the evidence. In *Davis,* the evidence of interstate commerce consisted of an unsworn statement preceded by an inadequate foundation. Here, an expert in firearm origin testified to the place of manufacture of the firearms. Harper's contention that Craze's testimony was improperly based on hearsay is without merit. Rule 703 of the Federal Rules of Evidence allows experts to rely on facts or data "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject" even if such facts and data are not themselves admissible in evidence. Craze testified that the origin of a firearm is determined by consulting markings on the gun, trade publications, and company catalogues. It was information from these sources on which he relied.[8]

Craze also testified that the firearms in question were not manufactured in Mississippi. Because the testimony indisputably showed the firearms were purchased in Mississippi, Craze's testimony also established the required interstate commerce nexus. *See United States v. Walden,* 707 F.2d 129, 132 (5th Cir.1983). Accordingly,

---

6. The ATF 4473 forms were admitted into evidence following the testimony of Gary Dedeaux, owner of Gary's Pawn Shop. Dedeaux stated that they were official records of Gary's Pawn Shop, were compiled in the ordinary course of business and were made at or about the time of the transactions represented on the forms. Additionally, Sherry Thompson Irby and Margaret Mercier Fretz, the employees who completed the forms, testified and were cross-examined by defense counsel.

7. The United States also offered ATF forms completed by the testifying ATF agent and un-

known persons in ATF's Washington, D.C. office. The information elicited from these sources "was in large measure corroborative of established fact already before the jury ... [and therefore] was not prejudicial." *Davis,* 571 F.2d at 1358.

8. Craze also relied on exhibits 5 and 6, the ATF 4473 forms. These forms were admitted into evidence under the business records exception to the hearsay rule. *See United States v. Veytia-Bravo,* 603 F.2d 1187, 1191 (5th Cir.1979) (ATF 4473 forms admissible under Rule 803(6)).

the district court properly denied Harper's motion for directed verdict.

## VI

Accordingly, for the reasons stated here, the judgment of the district court is

AFFIRMED.