**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**William Eugene MERRITT,
Defendant–Appellant.**

No. 88–1866.

United States Court of Appeals,
Fifth Circuit.

Aug. 25, 1989.

David C. Alford (Court-appointed), Alford & Gassaway, Waco, Tex., for defendant-appellant.

Philip Police, LeRoy Morgan Jahn, Asst. U.S. Attys., Helen G. Eversberg, U.S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before GEE and JONES, Circuit Judges, and HUNTER,* District Judge.

GEE, Circuit Judge:

In 1988 a grand jury returned a three count indictment charging the defendant, a three-time convicted felon, with possession of firearms in violation of 18 U.S.C. Section 922(g)(1) and Section 924(e)(1). Counts one and three, charging violations of 18 U.S.C. App. Section 1202(a)(1), arose from the defendant's alleged possession of a .357 magnum revolver and a 20–gauge shotgun on November 14, 1986. Count two, charging violations of Section 922(g)(1) and 924(e)(1), arose from the defendant's alleged possession of a .25 caliber pistol on December 23, 1986. Following a jury trial, the defendant was convicted on all charges. On appeal the defendant contends: 1) that the conviction upon which his enhanced sentence was based was invalid because it resulted from a defective indictment; 2) that the court erred in treating the defendant's three prior burglary convictions as "violent felonies" for sentence enhancement purposes; 3) that the defendant's convictions were invalid because the superseding indictment was defective; and that the district court further erred in (4) admitting testimony regarding the origin of the firearms; 5) in admitting the firearms themselves; 6) in denying the defendant's motion to dismiss for want of a speedy trial and 7) in denying the defendant's motion to suppress evidence as seized in violation of the Fourth Amendment. We affirm.

1) *Defendant's Prior Conviction*

A) The Indictment

The defendant's sentence was enhanced pursuant to Section 1202(a) and 924(e)(1) because of his three prior convictions for "violent felonies." The defendant contends that one of these convictions, an August 13, 1971 state conviction for "burglary by breaking," was invalid because it was based upon a defective indictment. The indictment which the defendant challenges charged that he "did ... unlawfully break and enter a house" in violation of Former Tex.Penal Code Art. 1390 (1925), burglary by breaking. The defendant contends that the use of force to break and enter is an essential element of that crime, that his indictment was invalid because it did not allege the use of force, and that, since the indictment failed to allege an essential element, his conviction, based on a guilty plea, was not supported by the evidence. Finally, to round matters out, Merritt contends that his counsel was ineffective for failing to recognize that the indictment was invalid and that the proceeding was fundamentally unfair because the district attorney knew or should have known that the indictment was defective.

An indictment must allege every element of the crime charged. *United States v. Mullens*, 583 F.2d 134, 141 (5th Cir.1978). Under Texas law, "... entry by force is an essential element of ... [burglary]." *Livingston v. State*, 133 Tex.Crim. 437, 112 S.W.2d 190, 191 (1937). The defendant is correct, therefore, that an indictment for burglary must allege use of force. Under Article 1394 of the Texas Penal Code, however, "breaking" was defined to mean entry by "actual force." Therefore, the indictment charging that the defendant did "unlawfully break and enter a house" charged him with using force.

Further, assuming that "breaking" and "using force" were not synonymous under Texas law, the indictment was still valid. In *United States v. Contris*, 592 F.2d 893, 896 (5th Cir.1979) we stated that "[i]ndictments are ... read for their clear meaning and convictions will not be reversed because of minor deficiencies which do not prejudice the accused." In this case any minor deficiency would not have prejudiced the defendant. The indictment set

* District Judge of the Western District of Louisiana, sitting by designation.

forth the statute which the defendant was charged with violating, thus fairly informing him of the charge against him and permitting him to defend against it. *See, United States v. Vidaure,* 861 F.2d 1337 (5th Cir.1988). Because the indictment was valid the defendant's other arguments regarding the invalidity of the prior conviction are without merit.

### B) Burglary As A "Violent Felony"

▇ The defendant next contends that his burglary conviction cannot serve to enhance his sentence pursuant to Section 924(e)(1) because, under Texas law, burglaries are not crimes of violence. Section 924(e)(2)(B) provides in pertinent part, "... the term 'violent felony' [as used in Section 924(e)(1)] means any crime punishable by imprisonment for a term exceeding one year that ... (ii) is burglary...." In *United States v. Leonard,* 868 F.2d 1393, 1395 (5th Cir.1989) we held that a property crime enumerated in (ii) of this statute is a "violent felony" for sentence enhancement purposes "without regard to whether the underlying conduct involved actual or potential violence." The district court did not err, therefore, in considering the defendant's burglary conviction to be a "violent felony" for sentence enhancement purposes.

### 2) *The Superseding Indictment*

#### A) The Possession Of A Firearm Charge

▇ The defendant contends that his indictment under Count two for violation of Section 922(g)(1) and 924(e)(1) was invalid in that it alleged that he *possessed* a weapon but did not allege that he shipped or transported the weapon. According to the defendant, Section 922(g) prohibits transportation or shipment of firearms, but not their mere possession. Not so. On May 19, 1986, Section 922(g) was amended to prohibit a felon from possessing a firearm "in or affecting commerce." That amendment became effective on November 15, 1986. The conduct on which the charge in Count two was based occurred on December 23, 1986, over thirty days after the amendment became effective. The indictment is, therefore, valid.

### B) The Shipping & Transportation Of Firearms Charges

▇ The defendant also contends that his indictments on Counts one and three for violation of Section 1202(a) are invalid because they did not allege that the firearms at issue were "in commerce or affecting commerce." In support of his contention that these are magic words and an essential element of an indictment for violation of Section 1202(a) the defendant cites *United States v. Bowdach,* 458 F.2d 951 (5th Cir.1972). According to the defendant, in *Bowdach* we relied on the Supreme Court's decision in *United States v. Bass,* 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971), to reverse a conviction under Section 1202(a) because "the indictment did not allege ... that the firearms involved had been possessed 'in commerce or affecting commerce.'" The quote is accurate. The defendant, however, enjoys an uncanny ability to quote out of context. The true holding in *Bowdach* was that "to procure a conviction under 18 U.S.C.App. 1202(a) the government must show a nexus between the firearm in question and interstate commerce." *Id.* at 952. (Footnote omitted.)

In this case each indictment alleged that the defendant possessed a firearm "which had been shipped and transported in interstate commerce ..." This language sufficiently alleged the required nexus with interstate commerce; and these indictments were, therefore, valid.

### 3) *The "Origin Of The Firearms" Testimony*

▇ At trial a BATF agent testified concerning the interstate nexus of the weapons based upon the place of manufacture stated on the face of each weapon. The defendant objected to this evidence as hearsay. In *United States v. Davis,* 571 F.2d 1354 (5th Cir.1978), we held that ATF forms completed by a records custodian of the manufacturer could not be used as proof of a firearms movement in interstate commerce because they constitute inadmis-

sible hearsay. In *United States v. Harper*, 802 F.2d 115, 121 (5th Cir.1986), however, we held that expert testimony of firearms origin based on the markings on the weapon was not hearsay. In so doing, we noted that "[r]ule 703 of the Federal Rules of Evidence allows experts to rely on facts or data 'of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject.'"

The defendant does not directly attempt to distinguish *Harper* preferring, apparently, to ignore its existence. Without mentioning it, however, he attempts to avoid its holding by stating that the BATF agent "was not declared to be an expert." As the government notes, however,

> [W]ithout elaboration, Merritt obliquely states that Agent Alley "was not declared to be an expert witness." Although the district court did not expressly declare Alley to be an expert, it is evident from the record that both Merritt and the trial judge accepted him as such. Counsel for the United States questioned Agent Alley about his prior experience and training, and about his testimony as an expert on other occasions. Merritt did not ask to voir dire the witness, nor did he object when Alley gave opinion testimony. It is obvious, therefore, that Merritt understood Alley to be an expert without a formal express declaration from the court.

Under these circumstances, we think it clear that the BATF Agent was testifying as an expert. Therefore, *Harper* controls this issue; and the district court properly admitted the testimony.

### 4) *Admission Of The Weapons*

■ At trial, over the defendant's objection, the district court admitted three weapons allegedly possessed by the defendant.

| | |
|---|---|
| April 26, 1988—May 20, 1988 | Defendant's motion for investigative assistance (24 days) |
| June 7, 1988—July 11, 1988 | Defendant's motion to suppress evidence (34 days) |
| July 12,** 1988—Sep. 9, 1988 | Defendant's motion to dismiss (65 days) |

Trial was, therefore, delayed 123 days by the defendant's motions. Subtracting this

The defendant contended that the weapons had been returned to the defendant's former counsel, breaking the chain of evidence, and also argued that the hearsay rule prohibited use of the serial numbers on the weapons to show that they were the weapons seized. Despite the defendant's assertions, it appears that only one of the three weapons was ever released to the defendant's former counsel. The remaining weapons were, therefore, properly admitted. As to the third weapon, the serial number suffices to establish it as the weapon seized. Further, as is noted above, a serial number is not hearsay.

### 5) *Speedy Trial*

The defendant was arrested on April 15, 1988, and arraigned on April 21, 1988. He was tried on September 26, 1988. Prior to trial the defendant moved to dismiss the charges on the ground that he had been denied a speedy trial.

■ 18 U.S.C. Section 3161(c)(1) provides that trial must begin within 70 days of the defendant's first appearance or the filing or making public of the indictment or information. Under 18 U.S.C. Section 3161(h)(1)(F), however, "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion," is excluded from the calculation of the speedy trial time period. The delay is excluded even if it is unreasonable. *Henderson v. United States*, 476 U.S. 321, 326, 106 S.Ct. 1871, 1875, 90 L.Ed.2d 299 (1986).

■ In this case the defendant was arraigned on April 15, 1988. Trial began on September 26, 1988, 164 days later. The following time periods were excluded in calculating time for speedy trial purposes.

number from 164 leaves 41 days between the defendant's first appearance and the

---

** This motion was actually filed on July 5, 1988. To avoid overlap with the motion to suppress we counted from July 12.

commencement of trial, well within the 70–day requirement of the Speedy Trial Act. Therefore, the district court did not err in denying the defendant's motion to dismiss.

### 6) The Search & Seizure Issues

#### A) The Search Warrant

The defendant moved to suppress a weapon seized during the execution of a search warrant, his contention being that the affidavit in support of the warrant was defective. The affidavit states that the affiant heard the defendant and another man discussing a white powder which the affiant knew to be methamphetamine. Before the affiant swore to the affidavit, the magistrate asked him if the defendant had used the word "methamphetamine." The affiant stated that he had. The magistrate then added to the affidavit "plaintiff referred to this substance as methamphetamine." The defendant contends that under Texas law any addition to a warrant, even if approved by the magistrate, invalidates the warrant.

In support of this contention the defendant cites *Buchannan v. State*, 114 Tex. Crim. 418, 25 S.W.2d 838 (1930). In *Buchannan* the court held that additions made to a warrant, *after* the affidavit is sworn to and the warrant signed, invalidate the warrant even if the additions are approved by the magistrate. By contrast, in *Santos v. State*, 379 S.W.2d 667 (Tex.Crim. App.1964), the court upheld the validity of a warrant containing a penciled correction because, before executing the warrant, the officers returned to the issuing judge to have the correction made. The court reasoned that in returning to the issuing judge the officers "in effect swore to the affidavit as corrected" even though the judge did not require a second oath.

*Santos* clearly controls this case. The affiant here swore to the affidavit after the correction was made. The warrant is, therefore, valid; and the motion to suppress was properly denied.

#### B) The Warrantless Search

On December 23, 1986, police officers arrested the defendant at a motel pursuant to an arrest warrant. The officers had established that the defendant was in room 116, a room registered to a friend of his. This friend was known to the police to carry weapons. To effect the arrest the officers called room 116 and asked the defendant to surrender. The defendant agreed to come out, but failed to do so immediately. The officers then called a second time and again asked the defendant to surrender. The defendant stepped out and the officers arrested him. Knowing that the room was registered to a third person, the officers entered it to check for other persons. Just inside, in plain view, lay a .22 caliber pistol. The defendant contended that the pistol should have been suppressed because there were no exigent circumstances justifying entry into the room.

> Arresting officers have a right to conduct a quick and cursory check of the arrestee's lodging immediately subsequent to arrest—even if the arrest is made near the door but outside the lodging—where they have reasonable grounds to believe that there are other persons present inside who might present a security risk.

*United States v. Sheikh*, 654 F.2d 1057, 1071 (5th Cir.1981) (citations omitted).

Here the officers knew that the room was rented to a third party, known to them to carry weapons. They were, therefore, justified in checking the room for other persons. Once inside, they were entitled to seize contraband lying in plain view. The evidence, therefore, was properly admitted.

The judgment of the district court is

AFFIRMED.