UNITED STATES of America,
Plaintiff–Appellee,

v.

Edward Neal BONAVIA,
Defendant–Appellant.

No. 87–6110.

United States Court of Appeals,
Eleventh Circuit.

March 28, 1991.

James R. Gailey, Federal Public Defender, Kathleen J. Cooper, Asst. Federal Public Defender, Miami, Fla., for defendant-appellant.

Harriett R. Galvin, Anne M. Hayes, Linda Collins Hertz, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before FAY and EDMONDSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

EDMONDSON, Circuit Judge:

■ Bonavia appeals his convictions for three violations of 18 U.S.C.App. § 1202(a)(1), which prohibits the possession of firearms by a convicted felon.[1] He says that the convictions should be reversed or that he should be granted a new trial. The only issue which merits discussion is Bonavia's contention that the district court erred in denying his pretrial and post-trial motions to consolidate counts two, three, and four of the indictment into a single count because of their multiplicity.[2] Concluding that counts two and three involve the simultaneous, undifferentiated possession of firearms, but that count four involves a separate possession, we affirm Bonavia's convictions on counts two and four, reverse Bonavia's conviction on count three, vacate the sentence imposed by the district court, and remand for resentencing.

## I. Background[3]

On May 30, 1985, a warrant to search South East Connectors ("S.E.C."), of which Bonavia is the president and sole owner, was executed. The federal agents who executed the search warrant seized four firearms from Bonavia's office. As indicted, Bonavia was charged with the possession "beginning from an unknown date and continuing through and including May 30, 1985" of a Smith and Wesson Model 28–2 .357 caliber Magnum revolver (count two; Government Exhibit 4A); a Sturm Ruger Model "Police Service 6" .357 revolver (count three; Government Exhibit 5); and a Wesco Ordnance Mark IV .9 mm semi-automatic rifle (count four; Government Exhibit 3).[4]

Evidence presented at trial showed that Bonavia, convicted of the felony of injuring telephone lines in violation of Florida law in 1966, had received the three weapons (the Smith and Wesson, the Sturm Ruger, and the Wesco) from Barry Bobes at one time.[5] S.E.C.'s secretary/treasurer, Nancy Springer, testified that Bonavia had said that he was buying the firearms from Bobes. Bonavia and Bobes testified that the firearms were collateral for a loan that S.E.C. had made to Bobes and that the guns were "possessed" by the corporation.

In addition, former S.E.C. employee Paul Speese testified that on one occasion (probably sometime in 1985) when he visited Bonavia at Bonavia's house in Miami Lakes, he had observed Bonavia with a firearm—"a rifle type weapon, resembling a submachine gun type weapon"—which Bonavia had brought from the house. He

---

1. 18 U.S.C.App. § 1202(a), repealed effective November 15, 1986, provides, in part, that

 Any person who—
 (1) has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony, [ ]

 . . . . .

 and who receives, possesses, or transports in commerce or affecting commerce, after the date of enactment of this Act, any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both.

 When Congress repealed § 1202(a), it amended 18 U.S.C. § 922(g) to include the § 1202(a) offense.

2. The other issues raised by Bonavia are claims of (1) various problems with the affidavit supporting the search warrant under which the firearms were discovered; (2) error in the admission of evidence on his possession of other firearms and of his drug use; and (3) the insufficiency of the evidence to show that the firearms had traveled in interstate commerce.

These issues are meritless. In so concluding, we adopt the current Fifth Circuit's interpretation of *United States v. Davis*, 571 F.2d 1354 (5th Cir.1978): that *Davis* does not bar a firearms expert from testifying—based on his examination of the weapons in question and his consultation of reference books—about where the particular weapons had been manufactured, to establish the required interstate nexus. *See United States v. Merritt*, 882 F.2d 916 (5th Cir.1989); *United States v. Harper*, 802 F.2d 115 (5th Cir. 1986).

3. We present only the facts relevant to the issue of the multiplicity of the counts.

4. Bonavia was also indicted for possession on March 23, 1983 of another weapon in count one; he was acquitted of this charge.

5. Bonavia also received a fourth weapon, a Universal M–1 Carbine, from Bobes at this time; it was not the subject of the indictment because it was manufactured in Florida.

also testified that then both Bonavia and he had fired about four or five shots from the firearm over a nearby lake. After examining Government Exhibit 3 (the Wesco charged in count four),[6] Speese was fairly certain that that weapon was the one which they had fired over the lake. Speese further testified that several months before this shooting incident, he had seen Bonavia placing what Speese thought was probably the same weapon (contained in a gun case) into Bonavia's car at S.E.C.

At trial, Bonavia testified on his own behalf and denied ever firing the weapons charged in the indictment, denied removing weapons from S.E.C. premises, and specifically denied the shooting incident described by Speese.

Before trial, Bonavia had moved to dismiss counts three and four of the indictment as multiplicitous to count two, urging that all three counts allege one offense in three counts. This motion was denied before trial because the district court believed that the government should have the opportunity to show separate possession of the weapons. After Bonavia was convicted on counts two, three, and four, he moved to merge counts three and four into count two, again contending that the evidence showed only the simultaneous, undifferentiated possession of three weapons. This motion was also denied.

## II. Discussion

### A. *Is the Indictment Multiplicitous?*

Bonavia contends that it was improper for the district court to try, convict, and sentence him on all three counts of the indictment because they are multiplicitous. Therefore, he says that his convictions on counts three and four should be reversed. The government concedes that counts two and three are multiplicitous—and that the case should be remanded so that the district court can vacate the sentence on count three and merge that count with count two for purposes of resentencing—but contends that count four alleges a separate and distinct possession which supports a separate conviction and sentence.

Under Eleventh Circuit precedent, "[a]n indictment is multiplicitous if it charges a single offense in more than one count." *United States v. Howard,* 918 F.2d 1529, 1532 (11th Cir.1990). "[T]he simultaneous, undifferentiated possession of multiple firearms constitutes only one offense under 18 U.S.C.App. § 1202(a)." *United States v. Hodges,* 628 F.2d 350, 351 (5th Cir. 1980);[7] *see also United States v. Grinkiewicz,* 873 F.2d 253, 255 (11th Cir.1989) (the " 'simultaneous possession of several weapons constitutes only one offense under Section [922(g) ]' " (brackets in original)). The general rule is that " '[o]nly one offense is charged under the terms of § 1202(a)(1) regardless of the number of firearms involved, absent a showing that the firearms were stored or acquired at different times or places.' " *United States v. Bullock,* 615 F.2d 1082, 1084 (5th Cir. 1980) (quoting *United States v. Rosenbarger,* 536 F.2d 715, 721 (6th Cir.1976)).[8] Thus, we have held that section 1202(a) "allows the government to treat each of

**6.** The identity of the weapon about which Speese had testified, and the count of the indictment in which its possession was charged, was the subject of *no little confusion in the appellate briefs and at oral argument.* The trial transcript of Speese's testimony indicates that the prosecutor had displayed Government Exhibit 5 (the Sturm Ruger charged in count three) to Speese. However, defense counsel, during cross examination of Speese refers to the weapon about which Speese testified as Government Exhibit 3 (the Wesco charged in count four.) Given Speese's description of the weapon as a "rifle type weapon" and the government's pre- and post- trial indications that the weapon involved in the incident described by Speese was the Wesco, we have concluded that the prosecutor actually displayed Government Exhibit 3 to

Speese, but misidentified it as Government Exhibit 5. Our opinion reflects this conclusion.

**7.** In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (*en banc*), the Eleventh Circuit Court of Appeals adopted as precedent the decisions of the former Fifth Circuit issued before October 1, 1981.

**8.** *See also United States v. Jones,* 841 F.2d 1022, 1024 (10th Cir.1988); *United States v. Baugh,* 787 F.2d 1131, 1132 (7th Cir.1986); *United States v. Marino,* 682 F.2d 449, 454–55 (3d Cir. 1982); *United States v. Wiga,* 662 F.2d 1325, 1336 (9th Cir.1981); *United States v. Mason,* 611 F.2d 49, 51–52 (4th Cir.1979).

several firearms not simultaneously received or possessed as separate units of prosecution." *Bullock*, 615 F.2d at 1086. The government can prove separate receipts by establishing that "the weapons were acquired at different times or places"; separate possessions can be established "by showing either that the weapons were stored in different places or that the weapons were acquired at different times or places." *United States v. McCrary*, 643 F.2d 323, 326 (5th Cir. Unit B 1981).[9]

■ The government presented no evidence that Bonavia received the three weapons charged in counts two, three, and four at different times or in different places. It also presented no evidence that the weapons charged in counts two and three were stored in different places. So, counts two and three are multiplicitous.

While all three weapons were seized at the same time in Bonavia's office, the government did present evidence, through the testimony of Paul Speese, that Bonavia had taken the weapon charged in count four (the Wesco rifle) to Bonavia's home in Miami Lakes and had used it there. Thus, we are faced with the issue whether evidence that shows defendant—at some point between the time that he is presumed to have simultaneously received several weapons and the time that those weapons were seized from the same location (that is, at some point during the period of time alleged in the indictment)—held one of the weapons at a different location from the others is sufficient to establish a separate possession and, thus, a separate violation of section 1202(a).

■ In considering this issue, we recognize that the seizure of the weapons from the same place does not automatically answer the question of whether the weapons were separately possessed. We agree with the statement of the Fourth Circuit in *United States v. Mullins:*

Although the two guns were seized together, logic and the scheme of § 1202(a) strongly suggest that [the defendant's] acts of possession may not be viewed in a frozen, momentary state immediately prior to the seizure. The answer to the question whether there was one possession of two guns or two possessions is to be found in the course of his treatment of the firearms.... [T]he character of the possession is to be found in the possessor's course of conduct.

698 F.2d 686, 687 (4th Cir.1983) (two separate offenses chargeable because evidence sufficiently showed defendant's disparate course of dealing with two weapons). We hold that if evidence presented at trial establishes that defendant, at some point in the period covered by the indictment, separated one of the weapons charged in the indictment and possessed that weapon separately—that is, at a different location— the government may treat that weapon as a separate unit of prosecution, even though that gun was seized at the same time and in the same location as other weapons charged in the indictment and had been received by defendant at the same time as the other weapons.

B. *Sufficiency of the Evidence of Separate Possession*

■ At oral argument, Bonavia contended that, even if such a separate possession can support a separate conviction, the evidence on the possession of the Wesco rifle is insufficient to support a separate conviction in this case. Bonavia specifically argues that Speese did not identify the weapon charged in count four as *definitely* the same weapon as was involved in the shooting incident. In addition, Bonavia argues that Speese's testimony shows great uncertainty about when this incident supposedly took place.[10]

■ The standard of review we employ in judging the sufficiency of the evidence is whether the evidence—when con-

**9.** In *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33, 34 (11th Cir.1982), the Eleventh Circuit Court of Appeals adopted as precedent all decisions of Unit B of the former Fifth Circuit Court of Appeals.

**10.** When asked to estimate when the incident took place, Speese said that it was "probably late 1985."

sidered in the light most favorable to the government, and accepting all reasonable inferences from the evidence and the credibility choices made by the jury—proves the appellant's guilt beyond a reasonable doubt. A jury's verdict cannot be overturned if any reasonable construction of the evidence would have allowed the jury to find the appellant guilty beyond a reasonable doubt. *United States v. Montes–Cardenas,* 746 F.2d 771, 778 (11th Cir. 1984).

At trial, Speese had an opportunity to examine the weapon charged in count four to determine if it was the same weapon that Bonavia and he had shot at Bonavia's home. Although it had been several years since the incident took place, Speese stated "I would, with a fair degree of certainty, say that would probably be the same weapon. I am not that familiar with these types of weapons so I could say it was the same one." (sic). He later said, during cross-examination, "As I said 10 minutes ago, it appears to be similar to what I recollect firing."

A reasonable construction of this testimony is that the incident at Bonavia's home involved the Wesco rifle charged in count four of the indictment. A jury, hearing Speese's testimony and realizing that the events he described occurred at least two years before, could reasonably have believed that the incident took place and that it involved the same weapon. That the jury might actually have found Bonavia guilty of count four based on the presence of the Wesco rifle in Bonavia's office is not critically important; what is more important is that there is sufficient evidence, apart from the fact that the Wesco was found in Bonavia's office, to support a conviction for a separate possession.[11] We, thus, find the evidence sufficient to support a separate conviction for violation of 18 U.S.C.App. § 1202(a) and affirm Bonavia's conviction on count four.

 Implicit in this issue of sufficiency of the evidence is the issue of whether the district court erred in not charging the jury that it needed to find that Bonavia separately possessed each weapon in order to convict him on all three counts—an issue we consider *sua sponte.* Because Bonavia never objected to the court's failure to give an instruction on separate possession, never requested such an instruction, and never requested a special verdict form on which the jury could indicate whether it found that Bonavia had held the Wesco rifle at his home, we review the failure to give such an instruction for plain error, in the context of the charge as a whole and of the entire trial. *See United States v. Meester,* 762 F.2d 867, 880 (11th Cir.1985). We note that the plain error doctrine should be applied sparingly lest the contemporaneous objection rule, requiring timely objections to preserve issues for appeal, be swallowed by the plain error exception. *United States v. Reyes–Vasquez,* 905 F.2d 1497, 1501 (11th Cir.1990). We employ the plain error doctrine "only on appeal from a trial infected with error so 'plain' that the trial judge and prosecutor were derelict in countenancing it, even absent the defendant's timely assistance in detecting it." *United States v. Frady,* 456 U.S. 152, 163, 102 S.Ct. 1584, 1592, 71 L.Ed.2d 816 (1982). As our predecessor court said in *United States v. Gerald,*

> [p]lain error is error which is both "obvious and substantial".... The plain error rule is not a run-of-the-mill remedy. The intention of the rule is to serve the ends of justice; therefore, it is invoked "only in exceptional circumstances [where necessary] to avoid a miscarriage of justice."

---

11. *Cf. Bullock,* 615 F.2d at 1086–87 (Goldberg, C.J., dissenting) (alleging that majority affirms conviction for multiple possessions of firearms on evidence incidental to government's case and on basis different from that presented in indictment and jury instructions). There is greater reason to affirm the separate conviction here because the evidence regarding the possession at Bonavia's home was *not* incidental. In both the pre-trial oral discussion of Bonavia's motion to dismiss and the post-trial response to Bonavia's motion to merge, the government pointed out that Speese's testimony regarding this incident supported a separate conviction for possession of a firearm by a convicted felon.

624 F.2d 1291, 1299 (5th Cir.1980) (quoting *Sykes v. United States,* 373 F.2d 607, 612 (5th Cir.1966), and *Eaton v. United States,* 398 F.2d 485, 486 (5th Cir.1968)). Failure to instruct the jury on an essential element of a crime has been held to be plain error. *See, e.g., United States v. Pope,* 561 F.2d 663 (6th Cir.1977) (failure to instruct that "intent to distribute" was element of crime of possession of controlled substance with intent to distribute was plain error). The error of the district court here, if any, does not rise to that level: in his charge to the jury, the district judge did not omit any element of the crime of possession of firearms. We cannot say, when examined in the context of the entire trial—especially the evidence on the Wesco rifle and the government's arguing the case to the jury as if it had to prove separate possession—that the district court's failure to instruct the jury on separate possession resulted in the likelihood of a grave miscarriage of justice. *See Reyes–Vasquez,* 905 F.2d at 1500–01.

### C. *What Remedy?*

█ Having held that counts two and three are multiplicitous, we are faced with the question of what to do about it. Bonavia contends that his convictions should be reversed, while the government maintains that it is sufficient to vacate his sentences, merge the two counts, and remand for resentencing.

█ In a case involving just one defendant, if the defendant fails to object to the multiplicitous counts in his indictment before trial, he is barred from challenging his convictions on appeal and can only challenge his separate sentences for these convictions. *See Grinkiewicz,* 873 F.2d at 255. But, Bonavia *did* challenge the multiplicity of the counts before trial. Thus, the reversal of Bonavia's conviction on either count two or count three is proper. *See United States v. Smith,* 918 F.2d 1501, 1516 n. 5 (11th Cir.1990). We reverse Bonavia's conviction on count three. This, in turn, requires that Bonavia's current sentences on the two multiplicitous convictions be vacat-

ed and that he be resentenced. Because the district court considered all of the counts in arriving at an overall sentencing plan, we vacate Bonavia's sentences on all counts and remand to the district court for resentencing on counts two and four. *See United States v. Curry,* 902 F.2d 912, 917 (11th Cir.1990).[12]

### III. Conclusion

We AFFIRM Bonavia's conviction on counts two and four, REVERSE Bonavia's conviction on count three, VACATE all of Bonavia's sentences, and REMAND for resentencing on counts two and four.

**12.** We note that the district court can consider the evidence regarding the possession of the

weapon alleged in count three in arriving at the sentence for count two.