700 F.2d 1358
 12 Fed. R. Evid. Serv. 1256
 UNITED STATES of America, Plaintiff-Appellee,
v.
Marino Sanchez MARTINEZ, Dario Cordova Vargas-Blandon,
Eldidio Bezerra- Anicatide, Julio Velez-Miranda, Disildo
Gallardo Smith, Ausberto Ricar-Sanchez, Adalberto
Pedrosa-Caicedo, Sabino Iris Gutierrez, Rafael
Ballesteros-Velazquez, Manuel Mesino Pajaro, Rafeal C.
Correa, Victor C. Fuentes, Defendants-Appellants.
 No. 81-5529.
 United States Court of Appeals,
Eleventh Circuit.
 March 21, 1983.
 
 Michael G. Smith, Fort Lauderdale, Fla., for Vargas-Blandon.
 Paul M. Korchin, Miami, Fla., for Gallardo Smith.
 Fernando E. Heria, Hialeah, Fla., for Rafael Cordova-Correa.
 Mary Catherine Bonner, Fort Lauderdale, Fla., for Velez-Miranda.
 G. David O'Leary, Miami, Fla., for Bezerra-Anicatide.
 Robin B. Gluck, Miami, Fla., for Sabino Gutierrez.
 Thomas D. Sclafani, Ron Dion, Entin, Schwartz, Angert, Dion & Broudy, North Miami Beach, Fla., for Pedrosa-Caicedo.
 Steven E. Kreisberg, court-appointed, Miami, Fla., for Ricar-Sanchez.
 Juan Ramirez, Jr., Coral Gables, Fla., for Ballesteros-Velazquez.
 Thomas F. Almon, Almon & Brodsky, court-appointed, Miami, Fla., for Pajaro.
 Glenn Bruce Kritzer, Sonia Escobio O'Donnell, James G. McAdams, III, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.
 Appeals from the United States District Court for the Southern District of Florida.
 Before FAY and CLARK, Circuit Judges, and MARKEY*, Chief Judge.
 FAY, Circuit Judge:
 
 
 1
 Thirteen defendants appeal their convictions of conspiracy to possess with intent to distribute marijuana, 21 U.S.C. Section 955c, and possession with intent to distribute marijuana, 21 U.S.C. Section 955a(a). The appellants present many issues on appeal relating to jurisdiction, admission of a foreign document, cautionary instructions on a prior conviction, the sufficiency of the evidence, jury instruction on stateless vessels, the seizure of the vessel and the impartiality of the trial judge.[1] After careful consideration of the issues raised by Appellants, we affirm the convictions.
 
 FACTUAL BACKGROUND
 
 2
 On December 24, 1980, the United States Coast Guard cutter "Dependable" encountered a seventy-five foot vessel in the Caribbean Sea, approximately ninety miles south of Cuba and two hundred miles from the nearest point in the United States. The "Dependable's" officers observed that the vessel was headed in a northerly direction, appeared to be heavily loaded and have a false waterline, bore no home port and the name "Ocean Lady" was on a plaque affixed to the vessel's cabin.
 
 
 3
 From a distance of approximately one hundred feet, Coast Guard Officer Nelson Romeu made contact with persons aboard the "Ocean Lady" by using a cardboard loud-hailer. One of these persons, appellant Marino Sanchez Martin, identified himself as the captain of the vessel and responded to officer Romeu's questions by stating that the vessel's name was Ocean Lady, its country of registration was Costa Rica, there were nine crew members, all the crew members were Costa Ricans, the last port was Aruba, the destination was Tampico, Mexico and the vessel had no cargo.
 
 
 4
 After this exchange, communication between officer Romeu and the captain resumed by C.B. radio. Romeu asked the same set of questions and the captain responded somewhat differently by stating that the vessel's country of registration was Honduras, there were thirteen crew members, all crew members were Columbians except himself, a Venezuelan, the last port was Barranquilla, Columbia, the destination was Tampico, Mexico and the vessel had no cargo.
 
 
 5
 Captain Marino Sanchez Martin gave permission to the Coast Guard to board the "Ocean Lady." After boarding, the Coast Guard personnel noticed the odor of marijuana. The captain produced documents including a Honduran vessel registration certificate and granted officer Romeu's request to conduct a security sweep of the vessel. The Coast Guard found numerous wrapped packages in the vessel's engine room, which subsequent tests showed to contain marijuana.
 
 
 6
 The Coast Guard initiated contact with the government of Honduras and remained on board the "Ocean Lady" with the captain's permission waiting for word from Honduras. The Coast Guard informed the crew that Honduras denied registration of the "Ocean Lady" and then placed the thirteen appellants under arrest, advised them of their rights, and transported them to the Drug Enforcement Administration office in Key West, Florida. The thirteen appellants were subsequently indicted, tried by a jury and all were found guilty on both counts.
 
 THE SEIZURE
 
 7
 Appellants argue that the Coast Guard's stopping and boarding of the "Ocean Lady" in international waters was unconstitutional under the Fourth Amendment. Whether the Fourth Amendment applies to stateless vessels is considered an open issue in this circuit. United States v. Marino-Garcia, 679 F.2d 1373, 1384 n. 21 (11th Cir.1982). Marino-Garcia, suggested that a number of considerations militate against extension of the Fourth Amendment to stateless vessels and that even if the Fourth Amendment applies, a vessel's status as stateless may render any search and seizure reasonable. Id.
 
 
 8
 However, we need not and do not decide this issue because the stopping and boarding of the "Ocean Lady" can be sustained under existing case law. As stated in Marino-Garcia:
 
 
 9
 [U]nder international law, the Coast Guard has the authority to approach an unidentified vessel in order to ascertain the vessel's nationality. Consistent with the Fourth Amendment, the Coast Guard may subject the unidentified vessel to a seizure for the limited purposes of a document inspection where there is reasonable suspicion to believe either that the vessel is an American flagship or that the vessel is attempting to conceal its identity.
 
 
 10
 Id. at 1385. [citations omitted] The Coast Guard approached the "Ocean Lady" to determine its nationality. After receiving inconsistent answers concerning the vessel's country of registration and noting that the name on the vessel's cabin was in the English language, the Coast Guard had "reasonable suspicion to believe" the vessel was "attempting to conceal its identity." Id. Further, the vessel's captain gave permission to the Coast Guard to board the "Ocean Lady."
 
 
 11
 Once on board, the Coast Guard has "the authority, indeed the duty, to act upon suspicions aroused during the boarding." United States v. Postal, 589 F.2d 862, 889 (5th Cir.1979). When the Coast Guard boarded, the officers noticed the smell of marijuana. The Coast Guard then conducted a security sweep of the vessel, apparently with the captain's consent, and found packages of marijuana.
 
 
 12
 There was nothing about the Coast Guard's stopping, boarding or seizure of the "Ocean Lady" which violated the Fourth Amendment or would deprive United States federal courts of jurisdiction.
 
 NEXUS
 
 13
 Prior to trial the appellants urged the district court to dismiss the indictment as premised on an unconstitutional statute, 21 U.S.C. Section 955a.[2] Appellants again raise this issue on appeal, contending that the United States does not have jurisdiction to prosecute a foreign crew member on a non-United States vessel for violation of federal controlled substance laws because there is no nexus between the person, vessel or acts and the United States.
 
 
 14
 Appellants' argument is foreclosed by the recent decision of United States v. Marino-Garcia, 679 F.2d 1373 (11th Cir.1982), which concluded that
 
 
 15
 [t]here need not be proof of a nexus between the stateless vessel and the country seeking to effectuate jurisdiction. Jurisdiction exists solely as a consequence of the vessel's status as stateless. Such status makes the vessel subject to action by all nations proscribing certain activities aboard stateless vessels and subjects those persons aboard to prosecution for violating the proscriptions.
 
 
 16
 Id. at 1383. Thus, Marino-Garcia, held that 21 U.S.C. Section 955a "properly extends the criminal jurisdiction of this country to any stateless vessel in international waters engaged in the distribution of controlled substances." 679 F.2d at 1383.
 
 JURY INSTRUCTION
 
 17
 The decision in Marino-Garcia is predicated on the vessel's status as stateless. Appellants, however contend that their convictions must be reversed because the jury instruction on stateless vessels was error.
 
 
 18
 In accordance with the convention on the High Seas,[3] the trial judge instructed the jury that "a 'vessel subject to jurisdiction of the United States' is a vessel which is not validly registered under the law of any nation; or a vessel which claims two or more nationalities according to its convenience, notwithstanding the validity of any claimed nationality...." Appellants contend that the jury instruction was erroneous because it was not supported by the evidence. Specifically, Appellants contend that the government failed to adduce evidence that Appellants intended to use two flags or nationalities "according to convenience."
 
 
 19
 The evidence at trial was that the Coast Guard received two different responses to questions concerning the vessel's country of registration (Costa Rica and Honduras), as well as inconsistent answers to other questions. There was testimony that the "Ocean Lady" was flying a Honduran flag and that the vessel was not flying any flag. Under these circumstances, the jury instruction was proper. It was within the jury's province to determine whether Appellants were claiming two nationalities according to convenience. While the jury might have concluded that the vessel's captain did not understand the first set of questions enabling the jury to disregard the inconsistent answers, the jury instruction provided the jury with that opportunity. The jury instruction was therefore not erroneous as unsupported by the evidence.
 
 THE DOCUMENT
 
 20
 A vessel may be stateless under the Convention on the High Seas if it claims two or more nationalities according to convenience or if it is a vessel which is not validly registered under the law of any nation. The Government sought to prove the latter alternative by the introduction of a certificate of non-registration of the vessel "Ocean Lady".
 
 
 21
 During the initial encounter with the Coast Guard, the vessel's captain produced various documents, including a Honduran vessel registration certificate.[4] The Coast Guard later informed the thirteen Appellants that the government of Honduras denied registration of the "Ocean Lady." At trial, the Government sought to introduce a certificate from the General Commander of the Naval Force of Honduras concluding that the "Ocean Lady" was not registered in Honduras.[5] Appellants objected to the document as inadmissible hearsay and contend on appeal that the district court's admission of the document constitutes reversible error.
 
 
 22
 The Government offered the document into evidence under Federal Rules of Evidence, Rules 803(10)[6] and 902(3).[7] Appellants first contend that Federal Rules of Evidence, Rule 803(8)(C)[8] renders the document inadmissible against any defendants in a criminal proceeding because the document contains "factual findings resulting from an investigation made pursuant to authority granted by law." Appellants rely primarily on United States v. Oates, 560 F.2d 45 (2nd Cir.1977) to support their position.[9]
 
 
 23
 In Oates, the Second Circuit concluded that the official report and accompanying worksheet of the United States Custom Service chemist who analyzed the white powdery substance seized from one of the defendants were hearsay and could not satisfy the public records and reports exception of Federal Rules of Evidence, Rule 803(8) because of subsection (C). The Oates court found that the chemist's report was a report of "factual findings resulting from an investigation made pursuant to authority granted by law" and therefore reasoned that Rule 803(8)(C) precluded the document's status as a public record. The Second Circuit, however, extended the proscription of Rule 803(8)(C) to Rule 803(b), the hearsay exception for records of regularly conducted activity predicated on its reasoning that the congressional intent was to "render law enforcement reports and evaluative reports inadmissible against defendants in criminal cases." United States v. Oates, 560 F.2d at 77.
 
 
 24
 Even assuming we were to find the Second Circuit's reasoning persuasive, Oates is inapposite. The document presently in question is not a law enforcement report or an evaluative report. Further, Appellants suggest that we extend Rule 803(8)(C) not to Rule 803(b), but to the entirely distinct hearsay exception for absence of public records or entry embodied in Rule 803(10). Such an interpretation would preclude admission against any defendant in a criminal trial of documents or testimony relating to the absence of any public record or entry. This is not the intent of the Federal Rules of Evidence,[10] nor has this Circuit ever intimated that the admission of documents or testimony under Rule 803(10) against a criminal defendant is problematic.[11] We therefore reject Appellants' argument that the document's admissibility was precluded by Rule 803(8)(C).
 
 
 25
 Appellants also contend that the document was inadmissible because it did not satisfy the criteria of Federal Rules of Evidence, Rule 803(10). Specifically, Appellants contend that the document was deficient because it did not state there was a diligent search. In considering the admissibility of a document, courts are not bound by "magic words," which if they appear like an incantation cast a spell of admissibility on the document. This is especially true when considering translated documents. The Honduran Naval Force certificate recites that "an extensive search has been carried out" and the failure to specifically state that a diligent search has occurred does not render the document erroneously admitted.[12] Further, the "diligent search" language of Rule 803(10) appears to apply to testimony rather than to certificates in accordance with Rule 902. There is no doubt that the certificate complied with Rule 902(3) concerning self-authenticating foreign public documents. See note 7 supra.
 
 
 26
 Appellants also contend that the Government failed to prove that records of vessels were regularly made and preserved for all of Honduras in that office. Appellants place much emphasis on the fact that the General Commander of the Naval Forces of Honduras is in the City of Comayueguela, Central District, but that the license found aboard the "Ocean Lady" was issued by the Commander of the port of Tela, Honduras. The certificate is signed by the "General Commander" of the Naval Force of Honduras and recites its conclusion that after a search at the "headquarters of this Command of the Title of Registration for the vessel denominated 'Ocean Lady' " that such vessel is not matriculated in Honduras. Appellants' arguments address the weight to be given to the document by the jury, but do not impair the document's admissibility when the document is self-authenticating under Rule 902.
 
 
 27
 We therefore conclude that the district court properly admitted the document from the General Commander of the Naval Force of Honduras.
 
 SUFFICIENCY OF THE EVIDENCE
 
 28
 Appellants contend that the evidence was insufficient to support the jury verdicts of guilt on both the conspiracy and possession counts. As we recently stated in United States v. Barnes, 694 F.2d 233 (11th Cir.1982):
 
 
 29
 In assessing the sufficiency of the evidence supporting a criminal conviction, the standard of review is: "It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt. A jury is free to choose among reasonable constructions of the evidence."
 
 
 30
 Id. at 233. The evidence must be examined in the light most favorable to the Government. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942).
 
 
 31
 The evidence adduced at trial was sufficient to enable a reasonable jury to find guilt beyond a reasonable doubt. The thirteen appellants were aboard a seventy-five foot shrimping vessel with over 26,000 pounds of marijuana. Coast Guard personnel could smell the marijuana as soon as they boarded the vessel. The vessel's captain gave inconsistent answers regarding the vessel's country of registration, destination, number and nationality of crew members and last port. Additionally, the captain stated there was no cargo.
 
 
 32
 "It is well established that where crewmen are found aboard a vessel upon which the presence of contraband is obvious, their conspiracy is inferable." United States v. Julio-Diaz, 678 F.2d 1031 (11th Cir.1982). Further, a jury could reasonably conclude that the crewmen constructively possessed the marijuana because more than mere presence has been established. United States v. Riker, 670 F.2d 987 (11th Cir.1982). Thus we find that a reasonable jury could have concluded that the thirteen appellants were guilty of conspiracy to possess with intent to distribute marijuana and possession with intent to distribute marijuana and decline to overturn Appellants' convictions.
 
 RICAR-SANCHEZ'S CAUTIONARY INSTRUCTION
 
 33
 Appellant Ricar-Sanchez contends that the district court committed error requiring reversal of his conviction by denying his requested cautionary instruction concerning jury consideration of a prior conviction for conspiracy to import marijuana. The evidence of the prior conviction was properly admitted, over objection, in accordance with United States v. Beechum, 582 F.2d 898 (5th Cir.1978), cert. denied, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979), because intent was a seriously contested issue during the trial. Appellant Ricar-Sanchez then requested a cautionary instruction "to the effect that the conviction can only be considered as against Mr. Ricar insofar as it may reflect on the knowledge and intent issue and cannot be used to infer guilt of this charge." Tr. at 771. The trial judge responded, "I am not going to get into commenting on the evidence. I am simply going to say the government is offering it against Ausberto Ricar-Sanchez and it may only be considered by the jury in their consideration of the verdicts involving his case." Tr. at 771. After the evidence concerning the prior conviction of Ricar-Sanchez, the trial judge instructed the jury:
 
 
 34
 Ladies and gentlemen, just very briefly, the testimony of the last witness will be considered by you in determining the verdict with respect to Ausberto Ricar-Sanchez.
 
 
 35
 It is not admitted into evidence for any other purpose against any other defendant. All right. Thank you.
 
 
 36
 Tr. at 789.
 
 
 37
 Without question, the trial judge did not sufficiently instruct the jury. We can only speculate why the judge failed to give the instruction approved by the District Judges Association.[13] We remind district judges in this circuit of the absolute importance of giving a cautionary instruction to the jury when evidence of extrinsic offenses is admitted.
 
 
 38
 We must therefore consider whether the district judge's failure to give the jury a sufficient cautionary instruction requires reversal or whether the error is harmless. The doctrine of harmless error does not require reversal of criminal convictions if the error had no substantial influence on the verdict and there was sufficient evidence to support the verdict apart from the error. United States v. Rodriguez, 573 F.2d 330 (5th Cir.1978).
 
 
 39
 We find that the error in this case was harmless. There was sufficient evidence to support the verdict without the evidence of the prior conviction of Appellant Ricar-Sanchez. The evidence against all thirteen Appellants was virtually identical. The extrinsic offense evidence against Ricar-Sanchez could not have had a substantial influence on the jury's verdict where other Appellants, against whom evidence of prior convictions was not admitted, were also convicted. Further, during the final jury charge, the district court instructed the jury that "the defendant is not on trial for any act or conduct or offense not alleged in the indictment."[14] We therefore conclude that on the specific facts of this case, the failure to give the proper cautionary instruction is harmless error.
 
 TRIAL JUDGE'S IMPARTIALITY
 
 40
 Appellants argue that the district judge was not impartial. After a review of the transcript, we find no evidence that the trial judge failed to maintain an aura of impartiality. The trial lasted over a week, involved thirteen defendants and was complicated by language barriers requiring interpreters. Under such circumstances, it is not surprising that everything done or said by the trial judge did not please the numerous counsel involved. It appears to us that the trial court was even-handed with all concerned. We therefore find Appellants' contention to be meritless.
 
 CONCLUSION
 
 41
 Having considered all the issues raised by Appellants and finding that none require reversal, the convictions of all thirteen Appellants are AFFIRMED.
 
 CLARK, Circuit Judge, specially concurring:
 
 42
 I concur in the affirmance of the conviction. I would go further than the majority and hold that the Fourth Amendment does not apply to the stopping and boarding of a stateless vessel by the Coast Guard. Without such a right, the Coast Guard has no way of determining the vessel's nationality, which could be United States. This is certainly true of a vessel displaying the name "Ocean Lady," but I do not limit my opinion to vessels with an English language name.
 
 
 43
 21 U.S.C.A. Sec. 955b subjects to the jurisdiction of the United States "a vessel without nationality." 14 U.S.C.A. Sec. 89 authorizes the Coast Guard "upon the high seas" to "go on board of any vessel subject to the jurisdiction ... of the United States."
 
 
 44
 Thus, I have no problem interpreting these statutes to authorize the actions of the Coast Guard in this case. To accept the argument of appellants, the Coast Guard could not go on the vessel until a search warrant was obtained. This would require a delay. After boarding, as done here, there would be another delay while awaiting verification of the vessel's Honduran registration. In my opinion, the defendant's rights were protected when there was no arrest until the Coast Guard verified the lack of Honduran registration and that the vessel was in fact stateless. See United States v. Marino-Garcia, 679 F.2d 1373 at 1379 (11th Cir.1982).
 
 
 
 *
 Honorable Howard T. Markey, Chief Judge for the Federal Circuit, sitting by designation
 
 
 [1]
 We compliment appellants' attorneys for their cooperation and efficiency in organizing the issues on appeal. The appellants' attorneys have accomplished the rare feat of being thorough while avoiding repetition
 
 
 [2]
 21 U.S.C. Section 955a(a) provides:
 It is unlawful for any person on board ... a vessel subject to the jurisdiction of the United States on the high seas, to knowingly or intentionally manufacture or distribute, or to possess with intent to manufacture or distribute, a controlled substance.
 21 U.S.C. Section 955b(d) defines a "vessel subject to the jurisdiction of the United States" as including
 a vessel without nationality or a vessel assimilated to a vessel without nationality, in accordance with paragraph (2) of article 6 of the Convention on the High Seas, 1958.
 
 
 [3]
 Paragraph (2) of Article 6 of the Convention on the High Seas provides:
 A ship which sails under the flags of two or more States, using them according to convenience, may not claim any of the nationalities in question with respect to any other state, and may be assimilated to a ship without nationality.
 
 
 [4]
 Introduced into evidence as Government Exhibit 1, this document is in Spanish and entitled "Patente Definitiva de Navegacion" and appears to be issued by the Commander of the port of Tela, Atlantida, Honduras
 
 
 [5]
 The English translation of this document, introduced into evidence with the original, reads as follows:
 HONDURAN ARMED FORCES
 NAVAL FORCE
 CERTIFICATE
 The undersingned [sic] General Commander of the Naval Forces of Honduras and for whatever ends may be deemed necessary, certifies by this presents: that an extensive search has been carried out at the headquarters of this Command of the Title of Registration for the vessel denominated "OCEAN LADY" because of a petition in that respect of the Government of the United States of America; the results having been negative, this Command concludes that the vessel "OCEAN LADY" is not matriculated in Honduras likewise that the Permanent License of Navigation # 1987 which was found aboard the "OCEAN LADY" in North American waters was not issued by the Government of Honduras. Issued in the City of Comayeguela, Central District on 18th day of the month of March, 1981.
 DNET INF. D.E.M.
 (SHIP'S CAPTAIN)
 RUBEN HUMBERTO MONTOYA
 GENERAL COMMANDER
 NAVAL FORCE
 FIRST CLASS
 FIFTY CENTS
 1980-1983
 NO. 1460037
 AUTHENTIC
 The subscribed, Chief Clerk of the Ministry of National Defense and Public Safety by this means attests: that the preceding signature and says: RUBEN HUMBERTO MONTOYA is authentic for it is the same one that the Infantry Colonel D.E.M. (Ship's Captain) Ruben Humberto Montoya uses in his position as General Commander of the Naval Force. And for such ends that the interested party deems necessary this presents is issued in the City of Tegucigalpa, Central District on the 18th day of the month of March, 1981.
 Infantry Mayor
 JOSE DE. CASTILLO SUAZO
 Chief Clerk
 EHO-0335
 The undersigned, Deputy of the Chief Clerk in the Secretariat of State in the Foreign Relations Office, duly authorized certifies that the preceding signature that reads: "Jose D. Suazo" signed in his position as Chief Clerk of the Ministry of National Defense and Public Safety.
 Tegucigalpa, D.C. March 18th, 1981.
 AMILCAR LOPEZ ARTEAGA
 DEPUTY OF THE CHIEF
 CLERK'S OFFICE
 SEALS:
 General Directorate of Customs-Republic of Honduras
 Central Bank of Honduras
 Secretariat of Foreign Relations--Chief Clerk's Office,
 Honduras, Honduras, Central America
 Illegible Seal
 
 
 [6]
 Rule 803 provides that the following is not excluded by the hearsay rule, even though the declarant is available as a witness:
 (10) Absence of public record or entry. To prove the absence of a record, report, statement, or data compilation, in any form, or the nonoccurrence or nonexistence of a matter of which a record, report, statement, or data compilation, in any form, was regularly made and preserved by a public office or agency, evidence in the form of a certification in accordance with rule 902, or testimony, that diligent search failed to disclose the record, report, statement, or data compilation, or entry.
 
 
 [7]
 Rule 902 provides that extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:
 (3) Foreign public documents. A document purporting to be executed or attested in his official capacity by a person authorized by the laws of a foreign country to make the execution or attestation, and accompanied by a final certification as to the genuineness of the signature and official position (A) of the executing or attesting person, or (B) of any foreign official whose certificate of genuineness of signature and official position relates to the execution or attestation or is in a chain of certificates of genuineness of signature and official position relating to execution or attestation. A final certification may be made by a secretary of embassy or legation, consul general, consul, vice consul, or consular agent of the United States, or a diplomatic or consular official of the foreign country assigned or accredited to the United States. If reasonable opportunity has been given to all parties to investigate the authenticity and accuracy of official documents, the court may, for good cause shown, order that they be treated as presumptively authentic without final certification or permit them to be evidenced by an attested summary with or without final certification.
 
 
 [8]
 Rule 803(8)(C) provides an exception to the rule excluding hearsay as follows:
 ... in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.
 
 
 [9]
 Appellants also rely on United States v. Davis, 571 F.2d 1354 (5th Cir.1978), which considered the admissibility of certain documents of the Bureau of Alcohol, Tobacco and Firearms. Agreeing with the district court, Davis concluded that the government's proffer of the documents did not meet the criteria of Federal Rules of Evidence, Rule 803(8) and also was insufficient to overcome the hurdle posed by subpart (C) precluding admission of "factual findings resulting from an investigation made pursuant to authority granted by law" against the defendant in a criminal case. Davis reversed the district court's admission of the documents on the basis of Rule 803(6). Importantly, Davis did not apply the Rule 803(8)(C) exception to Rule 803(6), but construed Rule 803(6) as precluding the treatment of the documents as records of regularly conducted activity of the agency. Thus, Davis does not lend support to Appellants' position
 
 
 [10]
 As noted by one commentator on the Rules of Evidence:
 Rule 803(10) also deals with the question of how the absence of the record may be proved. At common law, absence could not be established by the custodian's certificate of due search and inability to find. A number of cases predating the federal rules or procedure endorsed this approach, which Wigmore prophesied "will some day be reckoned as one of the most stupid instances of legal pedantry in our annals."
 Rule 44(b) of the Rules of Civil Procedure and Rule 27 of the Rules of Criminal Procedure, which makes Rule 44(b) applicable to criminal proceedings, abrogated the common law refusal to allow proof by certificate of a lack of a record. Rule 44(b) authorized proof by a statement in writing declaring that after diligent search no record or entry of a specified tenor was found in the records designated by the statement. This statement had to be authenticated in the same way as Rule 44(a)(1) provided for domestic official records in the case of a domestic record, or according to Rule 44(a)(2) if a foreign record was involved. Rule 44(b) did not prevent resort to any other method authorized by law.
 
 
 [4]
 J. Weinstein, Weinstein's Evidence, 803-225 (1981) (footnotes omitted)
 
 
 [11]
 See e.g., United States v. Harris, 551 F.2d 621 (5th Cir.1977), which found a certificate stating that the defendant had not been granted a license to engage in business as a firearms or ammunitions dealer was admissible under Federal Rules of Evidence, Rule 803(10) in a prosecution for engaging in the business of dealing in firearms without a license in violation of 18 U.S.C. Section 922(a)(1)
 
 
 [12]
 See also, Harris, supra note 11, where the court stated, "Although there is no statement in the certificate that a 'diligent search' had been made, we think this omission does not cause the admission of the certificate to be reversible error." 551 F.2d at 622
 
 
 [13]
 This instruction to be given during the trial reads as follows:
 Evidence or testimony that an accused committed an act at one time or on one occasion is not evidence or proof whatever that such person did a similar act at another time or on another occasion.
 In other words, testimony that a defendant may have committed, at some other time, an act similar to the act or acts alleged in the indictment in this case, may not be considered by the jury in determining whether the accused in fact committed any act alleged in the indictment.
 Indeed, evidence or testimony concerning an act of a similar nature allegedly committed at some time or place, not charged in the indictment, may not be considered for any purpose whatsoever unless the jury first finds that the other evidence in the case, standing alone, establishes beyond a reasonable doubt, that the accused did the particular act charged in the [particular count of the] indictment under deliberation.
 On the other hand, if the jury should find beyond a reasonable doubt from other evidence in the case that the accused did the act charged in the indictment, then the jury may consider evidence as to some other act of a similar or like nature, on the part of the accused, in determining the state of mind or intent with which the accused did the act charged in the indictment. And, where proof of an alleged similar act done at some other time or place is clear and conclusive, the jury may, but is not obliged to, draw the inference and find that, in doing the act charged in the indictment, the accused acted willfully and not because of mistake or accident or other innocent reason.
 Pattern Jury Instructions, Prepared by Committee on Pattern Jury Instructions, District Judges Association, Fifth Circuit (1978).
 
 
 [14]
 In closing arguments, both the prosecutor and the attorney for Ricar-Sanchez referred to the extrinsic offense. Neither counsel objected to opposing counsel's discussion. Further, counsel's discussions were in accord with the law and properly explained how the evidence could be considered by the jury