**UNITED STATES of America, Plaintiff–Appellant,**

v.

**Alejandro GARATE–VERGARA, Santiago Roman–Bernel, Quintin Antivilo, Sergio Roman–Gomez and Manuel Olivares–Bermudez, Defendants–Appellees.**

**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Orlando LASTRA, Pedro Ramirez Palacios, Rodolfo Castillo Ponce, Danilo Antonio–Contreras, Jorge Domingo Romon–Gomez, Jaime Puebla Lopez, Luis Pacheco Torres, Albo Roman Moras Moraguez, Defendants–Appellants.**

**Nos. 87–5851, 87–5986.**

United States Court of Appeals, Eleventh Circuit.

Sept. 30, 1991.

Lawrence F. Ruggiero, New York City, for Lastra.

Michael J. O'Kane, P.A., Ft. Lauderdale, Fla., for Ponce.

Thomas A. O'Malley, Asst. U.S. Atty., West Palm Beach, Fla., Linda Collins Hertz and Mayra Reyler Lichter, Asst. U.S. Attys., Miami, Fla., for U.S.

Robert N. Berube, Asst. Federal Public Defender, Ft. Lauderdale, Fla., for Roman–Gomez.

Kathy Hamilton, Coconut Grove, Fla., for Lopez.

Yolanda Morales, Miami, Fla., for Torres.

Lee Weissenborn, Miami, Fla., for Moraguez.

Theodore J. Sakowitz, Robert N. Berube, Asst. Federal Public Defender, Miami, Fla., for Palacios.

Dennis Kainen, Law Offices of Alan Weisberg, Miami, Fla., for Antonio–Contreras.

Kenneth W. Lipman, Siegel & Lipman, Boca Raton, Fla., for Roman–Bernal.

Ruben M. Garcia, Fort Lauderdale, Fla., for Antivilo.

Ralph Michael Hursey, Ft. Lauderdale, Fla., for Sergio Roman–Gomez.

Ken Lange, Law Office of Ken Lange, Bay Harbor Islands, Fla., for Olivares–Bermudez.

Mario L. Cabello, Miami, Fla., for Garate–Vergara.

Before KRAVITCH and BIRCH, Circuit Judges, and DYER, Senior Circuit Judge.

KRAVITCH, Circuit Judge:

Appellants and appellees are thirteen Chilean seamen indicted for drug trafficking. After a jury trial and guilty verdicts as to all thirteen, the five appellees successfully moved for acquittal notwithstanding the verdict under Fed.R.Crim.P. 29(c) based on insufficient evidence. The government appeals these Rule 29(c) orders of acquittal. The eight remaining defendants also moved for acquittal under Rule 29(c) at trial, but their motions were denied. They appeal on a number of grounds. We affirm in part and reverse in part.

The Coast Guard first established radar contact with the M/V ATLANTIC TRADER, a cargo freighter, twenty to twenty-five miles from the Florida coast late in the evening of November 2, 1986. The Coast Guard vessel POINT BARNES approached the ATLANTIC TRADER, which had departed Maracaibo, Venezuela thirteen days earlier. The ATLANTIC TRADER altered its course by turning slowly to meet the POINT BARNES. The ATLANTIC TRADER was flying no flag identifying its country of origin; the city name "San Lorenzo," without a country, was printed on the stern. Coast Guard officers, speaking in English, radioed the ATLANTIC TRADER to request the nationality of the vessel. According to testimony at trial, appellant Lastra, the ATLANTIC TRADER captain, answered that both the boat and the crew were Chilean, but he later correctly identified the boat as Honduran. After the Coast Guard requested to board the ATLANTIC TRADER, Lastra requested a half hour delay, allegedly to transfer fuel between tanks. The POINT BARNES continued to follow the ATLANTIC TRADER in a southward direction during the radio exchange.

Shortly thereafter, about twenty minutes after the initial contact, Coast Guard officers noticed about thirty duffel bags floating in the water trailing behind and to the port side of the ATLANTIC TRADER. Although they never saw the bags being pitched overboard, they assumed that they came from the ATLANTIC TRADER. The Coast Guard retrieved eleven of the bags and found that their contents tested positive as cocaine. The ATLANTIC TRADER then encountered engine trouble and stopped in the water. The POINT BARNES caught up with the ATLANTIC TRADER again and was joined by another Coast Guard vessel, the CAPE CURRENT. After further radio contact and a delay of several hours, Coast Guard officials boarded the ATLANTIC TRADER at about 6:45 a.m. and arrested the thirteen men on board. After an extensive search, Coast Guard officers found that one of the three cargo holds contained 1,800 tons of gypsum rock and that the other holds were empty. The bulkhead of the hold with the gypsum was covered with silver paint, one portion of which appeared freshly painted. Cans of silver paint, Bondo metal filler, a ladder and sanding equipment were found nearby. After scraping away the fresh paint, an officer found a layer of Bondo filler and an access panel secured by several one-inch tack welds. The officer removed the panel and found an empty cargo space beneath the gypsum measuring 25 by 35 by 7 feet. No narcotics were found in the hold or elsewhere on the vessel. One officer testified that he found a lock in the captain's quarters engraved with oriental characters and the figure of a bird, which was similar to eight of the eleven locks found on the retrieved duffel bags. The Coast Guard then transferred the arrestees to a Coast

Guard station in Ft. Lauderdale, where Drug Enforcement Administration Agent Keaney stated that he noticed silver paint on several of the crew members. The Coast Guard also confiscated the crew's passports, U.S. currency and used plane tickets.[1]

The eleven duffel bags retrieved at sea contained 224 kilograms of cocaine. Later that month 400 more kilograms of cocaine were discovered along Florida's east coast in similar duffel bags and plastic packaging. Defendants were indicted for possession and conspiracy to possess with intent to distribute at least five kilograms of cocaine on a vessel subject to the jurisdiction of the United States, 21 U.S.C. §§ 955a(a), 955c [recodified at 46 U.S.C.App. § 1903] and 18 U.S.C. § 2. The jury found all 13 defendants guilty. The trial judge ordered acquittal under Fed.R.Crim.P. 29(c) for five of them based on the insufficiency of the evidence: Quintin Antivilo, Alejandro Garate–Vergara, Manuel Olivares–Bermudez, Santiago Roman–Bernal, and Sergio Roman–Gomez ("appellees"). The government appeals. The eight remaining appellants also appeal: Orlando Lastra, Pedro Ramirez–Palacios, Rodolfo Castillo–Ponce, Danilo Antonio–Contreras, Jorge Domingo Roman–Gomez, Jaime Puebla–Lopez, Luis Pacheco–Torres, Aldo Ramon Moras–Moraquez ("appellants").

## SUFFICIENCY OF THE EVIDENCE

As to all thirteen defendants we review the evidence, viewed in the light most favorable to the government, to see if a reasonable jury could find them guilty of the charged offenses. We review the evidence under this standard for both the eight appellants and five appellees because a trial court's judgment notwithstanding the verdict is reviewed de novo. See United States v. Battle, 892 F.2d 992, 998 (11th Cir.1990).[2]

To prove conspiracy the government must demonstrate that an agreement existed between two or more persons and that the defendant knowingly and voluntarily participated in it; these elements may be proved by circumstantial evidence. See Battle, 892 F.2d at 998; United States v. Alvarez, 837 F.2d 1024, 1027 (11th Cir.), cert. denied, 486 U.S. 1026, 108 S.Ct. 2003, 100 L.Ed.2d 234 (1988). A defendant's presence, although not determinative, is a material factor when weighing evidence of conspiracy. See United States v. Bain, 736 F.2d 1480, 1485 (11th Cir.), cert. denied, 469 U.S. 937, 105 S.Ct. 340, 83 L.Ed.2d 275 (1984). In reviewing the sufficiency of the evidence, we draw all reasonable inferences in favor of the jury's verdict and then consider whether a reasonable jury could find guilt beyond a reasonable doubt. See Alvarez, 837 F.2d at 1028.

This court considered at length the special factors applicable to drug conspiracy and possession cases involving narcotics-laden vessels at sea in United States v. Cruz–Valdez, 773 F.2d 1541 (11th Cir.1985) (en banc), cert. denied sub nom. Ariza–Fuentes v. United States, 475 U.S. 1049, 106 S.Ct. 1272, 89 L.Ed.2d 580 (1986). It outlined a number of factors to determine whether the jury may conclude that a defendant was guilty of conspiracy and possession or was merely present on the vessel: 1) probable length of the voyage, 2) the size of the contraband shipment, 3) the necessarily close relationship between captain and crew, 4) the obviousness of the contraband, and 5) other factors, such as suspicious behavior or diversionary maneuvers before apprehension, attempts to flee, inculpatory statements made after apprehension, witnessed participation of the crew, and the absence of supplies or equipment necessary to the vessel's intended use. Id. at 1546–47. The court also noted that size of the vessel is relevant in deter-

---

**1.** Five defendants had cash: Lastra ($3,000), Pacheco–Torres ($1,000), Sergio Roman–Gomez ($1,000), Olivares–Bermudez ($1,050), and Garate–Vergara ($1,065).

**2.** An appeal of a trial court judgment of acquittal notwithstanding a guilty verdict does not implicate the double jeopardy clause because the criminal defendant will not be subject to a second trial. See United States v. Scott, 437 U.S. 82, 91 n. 7, 98 S.Ct. 2187, 2194 n. 7, 57 L.Ed.2d 65 (1978); United States v. Sellers, 871 F.2d 1019, 1021 (11th Cir.1989).

mining the relative quantity of the contraband and its obviousness. *Id.* at 1546. The court stated that the circumstances required to establish voluntary participation were not reducible to a formula, but stated that given a large contraband shipment, the government's burden of proving participation by the crew is "relatively light." *Id.* at 1546–47.

Our standard was further defined in *United States v. Vidal–Hungria,* 794 F.2d 1503 (11th Cir.1986), in which we affirmed the conviction of the vessel's captain but reversed the convictions of the crew. We held, after examining the facts by the *Cruz–Valdez* standard, that the government had not offered sufficient evidence that the crew knew of a marijuana shipment that was hidden in a tightly sealed compartment aboard a 156–foot freighter. *Id.* at 1516; *see also United States v. Ospina,* 823 F.2d 429 (11th Cir.1987) (per curiam) (applying *Cruz–Valdez* factors), *cert. denied,* 485 U.S. 964, 108 S.Ct. 1232, 99 L.Ed.2d 432 (1988).

■ In the present case, the government offered the following as evidence of conspiracy and possession of the cocaine recovered from the duffel bags: that the ATLANTIC TRADER's gypsum shipment was false cargo because of its low commercial value and because the vessel contained no registered export cargo upon departing from Maracaibo; that the cocaine was kept in the 25 by 35 by 7 foot compartment in the middle hold under the gypsum, as evidenced by the matching locks and the fresh paint; that the cocaine became obvious when it was taken from the compartment and thrown overboard; and that allegedly evasive behavior by the ship's captain, appellant Lastra, was evidence of conspiracy. In addition, the government introduced the U.S. currency, plane tickets and previous travel of the crew and captain prior to embarking on the vessel to show they were a tight-knit group.[3] The sole evidence linking the crew members to the compartment where the cocaine allegedly was stored was the testimony by DEA Agent Keaney that he had seen silver paint on some of the defendants.

As to the captain and the crew members who allegedly had paint on them, the district court denied the Rule 29(c) motions for acquittal and let the jury's verdicts of guilty stand. We agree that the evidence was sufficient for a reasonable jury to find these defendants guilty. The government furnished sufficient evidence for a jury to conclude that the cocaine originated from the ATLANTIC TRADER's middle hold compartment beneath the gypsum. Appellant Lastra, the captain, was in a special position to know of the vessel's contents and any allegedly evasive behavior may be attributed to him as the person who guided the vessel and acted as spokesperson during the encounter with the Coast Guard. *See Battle,* 892 F.2d at 1002 (aircraft pilot); *United States v. Colindres–Davila,* 804 F.2d 623, 624–25 (11th Cir.1986) (chief engineer responsible for storage tanks); *Vidal–Hungria,* 794 F.2d at 1515 n. 12 (ship captain); *United States v. Pearson,* 791 F.2d 867, 871 (11th Cir.) (master of vessel), *cert. denied,* 479 U.S. 991, 107 S.Ct. 590, 93 L.Ed.2d 591 (1986); *United States v. Mosquera,* 779 F.2d 628, 630 (11th Cir.1986) (ship captain). The government argued that the lock found in Lastra's quarters resembling those found on several of the duffel bags linked Lastra to the cocaine. As for the crew members with paint on them, the jury was entitled to conclude that the paint, combined with the Bondo and operable sanding equipment found nearby, linked them to recent work on the storage compartment where the cocaine allegedly originated. *See Alvarez,* 837 F.2d at 1028 (welding equipment, sander and metal filler evidence of conspiracy). Therefore we con-

---

**3.** The passports and tickets revealed two separate episodes of travel. First, in mid-August 1986, Jorge and Sergio Roman–Gomez traveled with Contreras and Castillo–Ponce from Chile to Panama to Venezuela, then on to an undetermined location. Then, after a six-week interim, passports showed a second series of travel beginning October 14, 1986 from Haiti to Aruba to Venezuela and culminating in the departure on the ATLANTIC TRADER from Maracaibo, Venezuela on October 20, 1986. This second episode involved travel by all thirteen defendants except Jorge Roman–Gomez.

clude that the evidence was sufficient as to Lastra and the six crew members with paint: Ramirez–Palacios, Castillo–Ponce, Antonio–Contreras, Puebla–Lopez, Pacheco–Torres and Moras–Moraquez.

■ Without this critical piece of evidence, however, there was insufficient evidence to link the remainder of the crew to the cocaine shipment. This was the reasoning of the district court, which stated in its Rule 29(c) orders of acquittal that none of the five appellees had paint on them or exhibited evasive behavior before or after the Coast Guard boarded the ATLANTIC TRADER. Most important, the vessel itself was approximately 101 meters, or 330 feet, in length [4] and the government offered no evidence that these crew members were ever near the secret compartment or that they knew of it or its well-hidden and odor-free former contents. Here it took the Coast Guard at least two hours to discover and enter the compartment. *See Vidal–Hungria,* 794 F.2d at 1514 n. 11 (government's difficulty in detecting secret compartment demonstrates low likelihood of crew's knowledge). The government argues that it would have been impossible to extract the cocaine-laden duffel bags and throw them overboard without attracting the attention and assistance of the other crew members. It argues that the difficult operation of unloading thirty heavy duffels made the contraband inherently obvious, thus implicating the entire crew. Yet there is no evidence that the appellee crew members ever knew of this nighttime unloading operation, let alone participated in it. By the time the Coast Guard boarded, officers saw only four or five crew members on deck with captain Lastra, but they could not identify which ones. The rest were below deck or elsewhere. The evidence of previous travel before embarking on the ship, and the possession by three defendants of United States currency, is insuffi-

cient by itself to establish the necessary elements of conspiracy and possession.[5] The size of the ship and the thoroughness with which the contraband was hidden greatly weaken the assumptions of knowledge normally inferable from the large quantity of contraband and the length of the voyage. Thus, we affirm the district court's order of acquittal notwithstanding the verdict as to the five appellees.

■ That leaves appellant and crew member Jorge Roman–Gomez. He was the sole member of the crew whose conviction, despite a Rule 29(c) motion, was allowed to stand although he was not sighted with paint on him. He was carrying a used plane ticket that showed previous travel with three other defendants six weeks before the voyage on an unconnected route, but in this respect he was in the same position as his brother, Sergio, who was granted an acquittal. As noted above, the orders of acquittal for insufficient evidence as to appellees were proper because there was no evidence of a link between these defendants and the compartment. The reason for denying appellant Jorge Roman–Gomez's motion for acquittal is unclear. However, at sentencing the trial judge indicated that he credited the government's theory that Roman–Gomez boarded the ship at a clandestine location at sea, as evidenced by the fact that his passport did not reflect recent travel with the crew and departure from Maracaibo on the ATLANTIC TRADER. However, we find that this lack of documented travel with the crew does not establish conspiracy. If anything, it shows that appellant Roman–Gomez was less guilty than the other crew members similarly situated, who, the government argued, impliedly knew of the cocaine shipment because of joint travel preceding the voyage and during the voyage itself. Although we have found that travel together

---

4. In this regard the ATLANTIC TRADER is significantly larger than other vessels involved in drug smuggling cases. *See, e.g., Alvarez,* 837 F.2d at 1026 (65–foot fishing boat); *Colindres–Davila,* 804 F.2d at 624 (260–foot freighter); *Vidal–Hungria,* 794 F.2d at 1505 (156–foot freighter); *Cruz–Valdez,* 773 F.2d at 1543 (68–foot shrimp trawler).

5. Possession of U.S. currency alone will not establish a drug conspiracy. *See Alvarez,* 837 F.2d at 1027 (crew members had U.S. dollars, but court does not mention it as evidence of conspiracy).

on a vessel is a factor tending to show conspiracy, we have never held that *lack* of joint travel also shows conspiracy. For this reason, we reverse the conviction of appellant Jorge Roman–Gomez for insufficient evidence, and we affirm the trial court's disposition as to the other defendants.

### GRAND JURY TESTIMONY

■ Appellants Puebla–Lopez and Moras–Moraquez argue that a grand jury witness, DEA agent Keaney, gave false testimony that was critical to the indictment. Agent Keaney stated in the grand jury that Coast Guard officers had seen crew members throwing duffels overboard, and appellants claim that without this testimony the grand jury would not have indicted the defendants. Appellants state that these allegations were refuted at trial, particularly by Keaney's statement that he knew of no Coast Guard officer who actually saw bags being thrown from the ATLANTIC TRADER. They urge dismissal based on governmental misconduct. The district court denied defendants' motion to dismiss on this ground because it found that Keaney's statements to the grand jury, even if false, were not knowingly false and thus did not constitute intentional governmental misconduct.

We have recently reiterated that dismissal of an indictment for prosecutorial misconduct is an "extreme sanction which should be infrequently utilized." *See United States v. White*, 846 F.2d 678, 693 (11th Cir.1988) (quoting *United States v. Pabian*, 704 F.2d 1533, 1536 (11th Cir.1983) (quoting *United States v. Owen*, 580 F.2d 365, 367 (9th Cir.1978))). The defendant must show unfair or actual prejudice. *See United States v. O'Keefe*, 825 F.2d 314, 318 (11th Cir.1987); *United States v. Ricks*, 817 F.2d 692, 695 (11th Cir.1987). Conviction beyond a reasonable doubt without the use of the tainted testimony or alleged misconduct at trial makes it highly improbable that the grand jury indictment was based on insufficient probable cause. *Ricks*, 817 F.2d at 695–96. Even false testimony before the grand jury does not automatically require dismissal of an indictment:

> This court has indicated that the possibility that a witness may have given false testimony before the grand jury does not automatically vitiate an indictment based on that testimony; to dismiss an indictment the district court must also find an abuse of the grand jury process such as perjury or government misconduct.

*United States v. DiBernardo*, 775 F.2d 1470, 1475 (11th Cir.1985) (citations omitted), *cert. denied*, 476 U.S. 1105, 106 S.Ct. 1948, 90 L.Ed.2d 357 (1986); *see also United States v. Hyder*, 732 F.2d 841, 845 (11th Cir.1984) (failure to dismiss indictment based on unintentional prosecutorial misconduct).

We agree with the district court order finding that Agent Keaney's statement did not constitute perjury or intentional misconduct. Keaney was stationed at the Coast Guard station and was told that Coast Guard officers on the POINT BARNES had seen duffel bags that were thrown from the ATLANTIC TRADER. Keaney incorrectly assumed that they had seen the act of disposal rather than deduced it from the location of the bags in the water. Keaney did testify before the grand jury that the Coast Guard officers saw crew members throwing bags overboard, and he discovered his misapprehension later. The district court, after an inquiry into the question, was in the best position to determine whether Keaney's grand jury statement was perjurious and we need not disturb it. At trial, defense counsel repeatedly emphasized that no crew members were sighted throwing bags overboard, a fact Keaney acknowledged in his testimony. Thus, even though Keaney's grand jury statement was false, it was neither intentionally false nor sufficiently prejudicial to warrant dismissal of the indictment.

### PROSECUTORIAL COMMENTS

Appellant Lastra argues that portions of the prosecutor's closing argument denied him a fair trial by improperly referring to

matters not in evidence. The contested statements are:

The gun[s] to protect millions of dollars worth of cocaine. Well, they could have gone over the side just like the cocaine did, only guns are a lot heavier and they sink. R16:224.

They go over with the hardware of trafficking cocaine, the guns and there is no Miami Vice here. We're not talking rocket launchers, but an Uzi is certainly not something that is not associated with the cocaine trade, an Uzi being small and dark and it being night is not going to be seen as they're dumped off the side of the vessel. R17:152.

You saw Agent Keaney testify. You saw his cross examination. You saw his demeanor. You saw his forthrightness and then, you take that and you compare that to somebody [a defense witness] whose [sic] paid $55 an hour to do some pretrial work and $155 an hour to come into court and testify and you look at that type of testimony and then, you talk about bias? ... Somebody selling his soul will not admit to a mistake. R17:124.

A fourth comment responded to defense attacks on the prosecution's forensics analysis, or lack thereof, by stating that defense counsel could call his own experts but did not do so. Appellants argue this incorrectly gave the jury the impression that the defense had a burden to produce evidence or witnesses.

Defense counsel did not object at trial to the two gun comments; thus they will be reviewed for plain error. *See United States v. Eley,* 723 F.2d 1522, 1525–26 (11th Cir.1984). Defense counsel did object to the Faustian bargain comment, but the trial court allowed it to stand. An objection to the comment regarding experts was sustained and the trial court gave an extensive corrective instruction and polled the jury members to assure they understood it. We review the latter comments for reversible error.

 The test for evaluating prosecutorial comments is whether the remark was improper and "prejudicially affected sub-stantive rights of the defendants." *United States v. Alonso,* 740 F.2d 862, 874 (11th Cir.1984) (quoting *United States v. Vera,* 701 F.2d 1349, 1361 (11th Cir.1983)), *cert. denied,* 469 U.S. 1166, 105 S.Ct. 928, 83 L.Ed.2d 939 (1985).

 The Faustian bargain comment was a routine credibility attack, and although the prosecutor earlier had been warned, when addressing the court out of the presence of the jury, not to refer to the "$155 an hour opinions" of a defense witness, we cannot say that the reference denied appellants a fair trial or affected their substantive rights. Nor did the comment about the defense's failure to marshal expert testimony deny appellants a fair trial because the trial judge, upon defense objection, struck it and gave the jury an exacting curative instruction along with the standard instruction that the government alone has the burden of proof as to each element of the crime alleged. *See United States v. Hernandez,* 921 F.2d 1569, 1574 (11th Cir.), *cert. denied sub nom. Tape v. United States,* — U.S. —, 111 S.Ct. 2271, 114 L.Ed.2d 722 (1991).

 The most inflammatory comments were the two references to guns. Firearms were not part of the government's case or proof. However, as noted above, because no contemporaneous objection was made at trial, we review for plain error. It was defense counsel who first injected the issue of guns into the case by commenting on their absence in opening arguments and in cross-examining a government witness, and such an invitation for the prosecution to respond makes more permissible what would otherwise be an improper comment. *See United States v. Ard,* 731 F.2d 718, 728 (11th Cir.1984); *Eley,* 723 F.2d at 1526; *United States v. Males,* 715 F.2d 568, 571 (11th Cir.1983). Several other defense counsel also took subsequent opportunities to point out the absence of guns in their closing arguments. When combined with the trial court's caution to the jury that the prosecutor's arguments are not evidence, these comments did not deprive defendants of a fair trial or affect their substantive rights and did not constitute plain error.

## SEVERANCE

Appellant Lastra also contends that he was entitled to severance from the trial of the other defendants under Fed.R.Crim.P. 14 because the lawyers for the other appellants prejudiced him in their closing arguments. Specifically, Lastra objects to a concession by some defendants in their closings that cocaine was on the ATLANTIC TRADER, but that they as mere crew members were unaware of it. Lastra sought to prove at trial that cocaine was never on the vessel and originated elsewhere, and he claims this made his defense and those of the other defendants mutually antagonistic such that it was prejudicial to try them together. Lastra moved for severance after his closing argument and those of all the defendants. The court denied the motion but gave a cautionary instruction. We review this ruling for abuse of discretion.

 In general co-conspirators are tried jointly. *See United States v. Astling*, 733 F.2d 1446, 1454 (11th Cir.1984). Separate defenses among defendants do not require severance unless "the jury, in order to believe the core of testimony offered on behalf of [a] defendant must necessarily disbelieve the testimony offered on behalf of his co-defendant." *United States v. Esle*, 743 F.2d 1465, 1476 (11th Cir.1984) (quoting *United States v. Berkowitz*, 662 F.2d 1127, 1134 (5th Cir. Unit B 1981)), *reh'g denied*, 755 F.2d 176 (1985). In this case, however, the defenses were not irreconcilable or mutually exclusive. Lastra introduced two expert witnesses to show that the duffel bags did not come from the ATLANTIC TRADER, a defense adopted by the other defendants. Only in closing arguments did some of the defendants argue in the alternative, having presented no testimony on the point, that even if the bags came from the ship, the crew had nothing to do with them.[6] The jury still could have believed either theory based on the evidence presented. *Cf. United States*

*v. Carter*, 760 F.2d 1568, 1574 (11th Cir. 1985) (alibi defense and mere presence defense to drug conspiracy charges not irreconcilable). Thus, regardless of the timing of the motion, Lastra has failed to establish that the district court abused its discretion by denying his motion for severance.

## DISCOVERY

Appellant Contreras argues that a discovery violation by the government required exclusion of Agent Keaney's testimony that Contreras was one of the seamen who had silver paint on him when the Coast Guard brought the arrestees ashore. We review the district court's decision to admit the testimony for abuse of discretion. *See United States v. Euceda–Hernandez*, 768 F.2d 1307, 1311–12 (11th Cir.1985).

 In a pre-trial discovery letter dated February 6, 1987 the government stated that six of the defendants, not including Contreras, were observed with silver paint on them. Contreras contends that his trial counsel relied upon this characterization and that subsequent testimony by Keaney at trial that Contreras was one of the defendants with paint on them prejudiced him. The government claims that the omission of Contreras from the letter was an oversight, that it did not constitute a discovery violation because the standing discovery order did not require disclosure of the contents of future testimony and that there was no prejudice once Keaney did testify. We reverse a conviction only if an established discovery violation substantially prejudiced the defendant. *See United States v. Barragan*, 793 F.2d 1255, 1259 (11th Cir.1986). "In determining whether substantial prejudice exists, this Court considers whether the defendant was unduly surprised and did not have an adequate opportunity to prepare a defense, or whether the mistake had substantial influence on the jury." *Id.*

---

**6.** We have noted that it would be unusual to find compelling prejudice necessitating severance when the defense does not involve the presentation of evidence, but rather is pure argument. *See United States v. Magdaniel–Mora*,

746 F.2d 715, 718 n. 3 (11th Cir.1984), *reh'g denied*, 751 F.2d 1261 (1985); *United States v. Van Horn*, 789 F.2d 1492, 1506 (11th Cir.), *cert. denied*, 479 U.S. 854, 107 S.Ct. 190, 93 L.Ed.2d 123 (1986).

 In this case appellant was neither surprised nor prejudiced. Agent Keaney previously had told Contreras's trial counsel at a discovery conference before the discovery letter was written that Contreras was one of the defendants with paint on him. And although the paint testimony was crucial evidence, counsel for appellant had a full opportunity at trial to rebut it or to request a continuance to gather more evidence. Furthermore, any prejudice to Contreras's defense was minimized by the expert testimony of a witness for appellant Lastra, who testified that it is not uncommon for crew members to get paint on themselves during routine paint jobs at sea. Therefore, the district court's denial of the motion to strike the paint testimony regarding Contreras was not an abuse of discretion.

## COCONSPIRATOR STATEMENTS

 Appellant Moras–Moraquez argues that radio statements appellant Lastra made from the ATLANTIC TRADER to the Coast Guard during the encounter at sea were not admissible coconspirator statements under Fed.R.Evid. 801(d)(2)(E) and that the trial court's admission of them against the crew was error. Under the Rule, a statement is not hearsay if it is made by a coconspirator during the course of and in furtherance of the conspiracy. We review the district court's decision for abuse of discretion.

Appellant claims that once the Coast Guard accosted the ATLANTIC TRADER, any conspiracy to import drugs was over. The government, however, characterized several of Lastra's radio statements, such as the multiple identification of the ship's country of origin and requests to delay boarding, as evasion. Several radio statements were made while the ship proceeded in the water in a course opposite from its previous one, while the POINT BARNES trailed behind, and some were made after the Coast Guard retrieved the eleven duffels and the ATLANTIC TRADER was stopped. The government contends that Lastra's statements were part of a continuing conspiracy because they were designed to avoid capture or discovery of the cocaine shipments.

We agree with the government that admission of the statements was not error. Avoiding detection is a primary objective of drug smuggling, and a defendant's statements made during purported escape constitute statements made during the course of and in furtherance of the conspiracy. *See Carter*, 760 F.2d at 1581; *United States v. Cannington*, 729 F.2d 702, 709 (11th Cir.1984). The government was entitled to argue to a jury that the statements were part of an effort to avoid detection by the Coast Guard. Thus, the statements were properly admitted into evidence.

## AUTHENTICATION

 Appellant Castillo–Ponce argues that the district court improperly excluded a document offered by defendant in support of his motion to dismiss based on lack of jurisdiction. Appellant's motion at trial contended that the indictment must be dismissed because the ATLANTIC TRADER was not a vessel subject to the jurisdiction of the United States when the duffel bags were retrieved and the crew was arrested. 21 U.S.C. §§ 955a(a) and 955c [recodified as 46 U.S.C.App. § 1903(a)]. One ground of jurisdiction is consent of the home port, in this case Honduras, and appellant attempted to introduce into evidence a written statement of the Superintendent of the Honduran Merchant Marine that Honduras had not officially consented to the boarding of the ATLANTIC TRADER. The district court denied the defense motion on the ground that the statement was not properly authenticated under Fed.R.Evid. 902(3), which requires that foreign documents be certified by a consular agent of the United States.[7] *See United States v. Martinez,*

---

7. Rule 902(3) allows admission without further authentication of:

 **Foreign public documents.** A document purporting to be executed or attested in an official capacity by a person authorized by the laws of a foreign country to make the execution or attestation, and accompanied by a final certification as to the genuineness of the signature and official position (A) of the executing or attesting person, or (B) of any for-

700 F.2d 1358, 1365 (11th Cir.1983). We review the district court's decision to exclude the superintendent's statement for abuse of discretion. *See United States v. Castaneda–Reyes,* 703 F.2d 522, 524 (11th Cir.1983), *cert. denied,* 464 U.S. 856, 104 S.Ct. 174, 78 L.Ed.2d 157 (1983).

The trial judge did not abuse his discretion in excluding the document. The document, one copy in English and one in Spanish, stated that the Honduran Merchant Marine has not granted authorization for the U.S. government to board or inspect the ATLANTIC TRADER. The document was signed in Tegucigalpa, Honduras by "Lieutenant Commander Julio Raudales Soto, Superintendent National Merchant Marine" and was dated December 22, 1986, seven weeks after the ATLANTIC TRADER boarding and arrests. It was submitted along with two other documents. First, the defendant submitted a document signed by Francisco Vallecillo S. in Spanish and without translation. It purportedly certified the signature and position of Soto, the signer of the December 22 document. Second, the defendant submitted the written statement of Sandra J. Salmon, U.S. Consul in Tegucigalpa, stating that Francisco Vallecillo S. was assistant to the chief clerk of the Honduran Ministry of Foreign Affairs and that he had signed the attached document. Because the Salmon document never authenticated that Soto was authorized by the laws of Honduras to make the execution or attestation on consent, even through the Vallecillo S. document, we cannot say the district court abused its discretion by declining to admit it into evidence under Fed.R.Evid. 902(3). *See United States v. Perlmuter,* 693 F.2d 1290, 1293 (9th Cir.1982). Even if the proper chain of authentication was established and the trial court's exclusion of the Soto document was error, the error was harmless because the United States established a basis of jurisdiction other than consent, namely statelessness, discussed *infra.*

eign official whose certificate of genuineness of signature and official position relates to the execution or attestation or is in a chain of certificates of genuineness of signature and official position relating to the execution or attestation. A final certification may be made

## JURISDICTION

Appellants argue that the United States failed to comply with the jurisdictional prerequisites of the statute. 46 U.S.C.App. § 1903 [formerly 21 U.S.C. § 955a(a)]. The government offered two independent bases of jurisdiction under the statute: that the ATLANTIC TRADER was "assimilated to a vessel without nationality, in accordance with paragraph (2) of article 6 of the 1958 Convention on the High Seas" under section 1903(c)(1)(B) and that it was "a vessel registered in a foreign nation where the flag nation has consented or waived objection to the enforcement of United States law by the United States" under section 1903(c)(1)(C). Appellants argue that neither was sufficient to satisfy the jurisdictional requirement.

A preliminary question is whether the jurisdictional requirement is an issue to be decided by the trial court or by the jury. The distinction is important because at defendants' trial evidence that the ATLANTIC TRADER was assimilated to statelessness was presented to the jury, but evidence of consent by the government of Honduras was presented only to the trial judge as an issue of law. We noted conflicting authority on this point and deferred answering it in *United States v. Mena,* 863 F.2d 1522, 1532–33 (11th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 110, 107 L.Ed.2d 72 (1989), but we held in that case that evidence of jurisdiction, which was presented to the jury, was sufficient as a matter of both fact and law. Three cases since *Mena* have found that the jurisdictional requirement of the statute is a matter for the jury. *See United States v. Cuevas–Esquivel,* 905 F.2d 510, 513–14 (1st Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 208, 112 L.Ed.2d 169 (1990); *United States v. Maynard,* 888 F.2d 918, 926 n. 4 (1st Cir.1989); *United States v. Potes,* 880 F.2d 1475, 1478 n. 1 (1st Cir.1989).

by a secretary of an embassy or legation, consul general, consul, vice consul, or consular agent of the United States, or a diplomatic or consular official of the foreign country assigned or accredited to the United States.

In this case, as in *Mena,* we need not definitively resolve the issue because one of the grounds of jurisdiction, assimilation to statelessness, was presented to the jury and was supported by sufficient evidence. Under the statute, a vessel is assimilated to statelessness if it " 'sails under the flags of two or more States, using them according to convenience' or falsely claims a nationality other than that of the country in which it is registered." *United States v. Ayarza–Garcia,* 819 F.2d 1043, 1046 (11th Cir.) (quoting the Convention on the High Seas, Art. 6(2)), *cert. denied,* 484 U.S. 969, 108 S.Ct. 465, 98 L.Ed.2d 404 (1987); *Martinez,* 700 F.2d at 1362. A vessel may be deemed assimilated to statelessness if its spokesperson claims a false nationality or claims more than one nationality. *See United States v. Gonzalez,* 810 F.2d 1538, 1541 (11th Cir.1987); *United States v. Alvarez–Mena,* 765 F.2d 1259, 1264 n. 8 (5th Cir.1985). We view the sufficiency of the evidence of the ATLANTIC TRADER'S assimilation to statelessness in the light most favorable to the government, and all inferences must be drawn in favor of the jury's verdict. *See Ayarza–Garcia,* 819 F.2d at 1046. The ATLANTIC TRADER was not flying a flag when the POINT BARNES approached it. "San Lorenzo" was painted on the stern, but without an identifying country.[8] According to government testimony, appellant Lastra initially stated that the vessel's nationality was Chilean but later stated that it was Honduran. Although appellants vigorously challenged this testimony, it is for the jury to evaluate its strength. *See Ayarza–Garcia,* 819 F.2d at 1047; *Martinez,* 700 F.2d at 1362. The trial judge instructed the jury on assimilation of statelessness, and we hold that the evidence was sufficient for a reasonable jury to find the vessel was assimilated to statelessness for the purpose of establishing statutory jurisdiction over the vessel.

Appellants claim that the government's other basis of jurisdiction at trial—consent by the government of Honduras—functionally waived or superseded the assimilation to statelessness basis and that consent was not established. However, the government never rested its case for jurisdiction solely on consent. In its opposition to defendant's pretrial motion to dismiss for lack of statutory jurisdiction over the ATLANTIC TRADER, the government argued that the vessel was assimilated to statelessness. Later on, at trial, the government also developed the consent basis by introducing a document from the U.S. State Department, dated March 19, 1987, which stated that Honduran authorities consented to enforcement of U.S. law against defendants found aboard the ATLANTIC TRADER. The trial court admitted the document outside the jury's presence. At no point in the trial did the government abandon assimilation to statelessness as a basis for asserting jurisdiction over the vessel. Therefore, we need not decide whether the government's proffer on consent was sufficient for the same purpose.

For the foregoing reasons we REVERSE the conviction of appellant Jorge Roman-Gomez and AFFIRM the judgment of the district court as to the other twelve appellants and appellees.

---

8. There are cities of San Lorenzo located near water in Argentina, Ecuador, and Venezuela as well as the ATLANTIC TRADER'S actual home port of San Lorenzo, Honduras. *See Rand McNally Premier World Atlas* (1981).